UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DYNAMIC INDUSTRIES, INC., DYNAMIC INDUSTRIES INTERNATIONAL, LLC and DYNAMIC INDUSTRIES SAUDI ARABIA, LTD.**<br><br>**VERSUS**<br><br>**METLIFE - AMERICAN INTERNATIONAL GROUP - ARAB NATIONAL BANK COOPERATIVE INSURANCE COMPANY; WALAA COOPERATIVE INSURANCE CO.; AMERICAN LIFE INSURANCE COMPANY; AIG MEA INVESTMENTS AND SERVICES COMPANY and MARSH & MCLENNAN COMPANIES INC.** | **CIVIL ACTION NO. 2:21-cv-748**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE** |

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Dynamic Industries, Inc., Dynamic Industries International, LLC, and Dynamic Industries Saudi Arabia, Ltd. ("Plaintiffs") who respectfully aver as follows:

### I. NATURE OF ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to determine an actual case or controversy regarding a comprehensive general liability insurance policy issued to several named insureds, including Plaintiffs, for the period January 12, 2017 until January 11, 2021.

### II. PARTIES

2. Dynamic Industries, Inc. ("DI") is a corporation organized under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana, and authorized

to do and doing business in the State of Louisiana. DI is the owner of seventy percent (70%) of DISA (defined below).

3. Dynamic Industries International, LLC ("DII") is a limited liability company organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana, and authorized to do and doing business in the State of Louisiana.

4. Dynamic Industries Saudi Arabia, Ltd. ("DISA") is a Saudi Arabian limited liability company, majority-owned by DI and headquartered in Al-Khobar Kingdom of Saudi Arabia.

5. Made Defendant herein is Marsh & McLennan Companies, Inc., d/b/a/ Marsh Inc. ("Marsh"), a foreign corporation authorized to and doing business in the State of Louisiana with its registered office designated at 3867 Plaza Tower Drive. Baton Rouge, LA 70816.  Marsh, through its affiliates, provides industry-focused consulting and brokerage services for insurance products on a worldwide basis.

6. Also made Defendant herein is Metlife - American International Group - Arab National Bank Cooperative Insurance Company ("MetLife-ANB"), foreign insurers who issued the policy of insurance in question in favor of Plaintiffs.

7. Also made Defendant herein is Walaa Cooperative Insurance Co. ("Walaa"), a foreign insurer who assumed and/or issued the policy of insurance in question and/or is the successor-in-interest to MetLife-ANB.

8. Also made Defendant herein is American Life Insurance Company ("ALICO"), a domestic company that owns and/or, at the time the policy of insurance in question was

issued, owned MetLife-ANB, and has or may have successor liability for MetLife-ANB obligations, including the policy at issue.

9. Also made Defendant herein is AIG MEA Investments and Services Company ("AIG MEA"), a domestic company that owns and/or, at the time the policy of insurance in question was issued, owned MetLife-ANB and has or may have successor liability for MetLife-ANB obligations, including the policy of insurance at issue.

### III. JURISDICTION AND VENUE

10. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or 28 U.S.C. § 1391(b)(3), as it is a judicial district in which a defendant is subject to the court's personal jurisdiction with respect to such action.

### IV. FACTUAL ALLEGATIONS

**A.     Background**

12. On June 10, 2015, DII and Aramco Overseas Company B.V., an affiliate of SAUDI ARAMCO as defined below, entered into Contract No. 6600035784 (OOK), Long Term Agreement for Offshore Facilities Contract, for Detailed Design, Materials Procurement and Fabrication of Facilities and CPRO No. 6510797896.

13. Separately, DISA and Saudi Arabian Oil Company ("SAUDI ARAMCO") entered into Contract No. 6600035785 (IK), Long Term Contract for Offshore Facilities, Contract for Procurement and Construction, and CRPO No. 3510797893 (collectively, the

"Contract"), which included work to replace five pipelines located in the Berri Field in the Kingdom of Saudi Arabia (the "Project").

14. Performance of the Contract by DISA is guaranteed by DI through a Parent Company Performance Guarantee, rendering DI directly liable for the obligations of DISA under the Contract.

15. As required by Paragraph 17 of the Contract, Plaintiffs sought and obtained a comprehensive general liability policy of insurance from MetLife-ANB (the "Policy") that provided the required insurance coverage at all relevant times during the Project. The Policy also provides coverage to parent and/or subsidiary companies. A copy of the Policy delivered to Plaintiffs is attached hereto as Exhibit 1.

16. The Policy was brokered by Marsh in New Orleans, Louisiana, with Plaintiffs utilizing the insurance services and expertise of Marsh to acquire the necessary coverage as required by the Contract.

17. Plaintiffs relied upon, and paid for, the knowledge, expertise and recommendations of Marsh to procure the necessary insurance protecting Plaintiffs from any loss as required under the Contract.

18. Marsh understood, through discussion with Plaintiffs, that Plaintiffs wished to procure all necessary primary insurance to protect them as required under the Contract.

19. DISA subcontracted certain portions of the work for the Project to Offshore Oil Engineering Co., Ltd. ("COOEC"), pursuant to Subcontract No. 6600035785 – 3648COOEC001-IK (the "Subcontract").

### B. The Incident

20. On or about the evening of June 25, 2019, a COOEC barge flotilla was involved in demolition and recovery operations in the Berri Field in the area at and around BRRI TP-2 and BRRI TP-3.

21. A grapple being utilized by COOEC personnel or those for whom COOEC is responsible and/or liable in the demolition operation, damaged a submarine power cable owned by SAUDI ARAMCO (the "Incident").

22. COOEC failed to timely report the Incident to either DISA or SAUDI ARAMCO.

23. During a routine survey of the field shortly thereafter, an unrelated survey vessel working for SAUDI ARAMCO discovered the damage to its submarine cable caused by the Incident.

24. This discovery was reported to DISA on or about September 7, 2019, and DISA relayed that information to COOEC. At the time of the report, SAUDI ARAMCO suspected that the damage had been caused by the recent COOEC operations in the area. DISA notified COOEC of these facts both verbally, namely in a September 23, 2019 meeting, and by letter dated September 25, 2019.

25. SAUDI ARAMCO's formal investigation into the cause of the damage ultimately revealed that the damage to the cable was occasioned during the COOEC demolition operation in connection with the Project, a fact confirmed by contemporaneous video evidence.

26. DISA received formal notice of this discovery on March 24, 2020, at which time SAUDI ARAMCO requested that DISA rectify the damage pursuant to the express terms of the Contract and implement temporary repair solutions by April, 30, 2020 in order to allow for installation of a new cable by March of 2021.

27. DISA immediately tendered this notice to COOEC, by letter dated March 26, 2020. In that notice, DISA further requested COOEC place its insurance carriers on notice of the loss.

28. On April 7, 2020, SAUDI ARAMCO reiterated its request that DISA submit an action plan for the temporary solution and permanent replacement of the damaged cable, noting its criticality to SAUDI ARAMCO's other operations.

29. On April 14, 2020, DISA forwarded the April 7, 2020 correspondence from SAUDI ARAMCO to COOEC, and reiterated its demand that COOEC (i) immediately submit an action plan for the replacement of the submarine cable, and (ii) place its underwriters on notice.

30. To date, neither COOEC nor its insurers have accepted the claim or made payment. In fact, to date, COOEC's insurers have denied any coverage for the Incident to Plaintiffs.

31. Accordingly, there is no other insurance available to Plaintiffs for the losses at issue.

32. Because Plaintiffs have direct liability to SAUDI ARAMCO and its affiliates for certain property damage caused by any subcontractor, including COOEC, under the terms of the Contract, Plaintiffs bought primary insurance coverage in the Policy issued by MetLife-ANB.

C. The DISA Contract

33. The Contract contains a clause obligating DISA to SAUDI ARAMCO for damage to "other property," subject to certain conditions and qualifications.

34. Under the terms of the Contract, the damage to the submarine cable was damage to "other property." The Contract defines "SAUDI ARAMCO Other Property" as follows: "… means SAUDI ARAMCO's units, systems, structures, plants and equipment existing separately from the FACILITIES, and any part of the FACILITIES which WORK has

been terminated or which SAUDI ARAMCO assumes custody and control pursuant to Paragraph 9.6."

35. Pursuant to the Contract, Schedule "H" – Section 1.20 entitled "DISTRIBUTION OF RISKS," replaces Paragraph 16.2 of Schedule "A" with the following:

> 16.2.2   Separate and apart from the obligations set forth in Paragraph 11.1 and/or Paragraph 11.3, if the loss, damage or destruction of the FACILITIES or SAUDI ARAMCO Other Property is due to an event resulting from the negligence, willful misconduct or fault of CONTRACTOR or CONTRACTOR GROUP CONTRACTOR shall compensate SAUDI ARAMCO for loss or damage to the FACILITIES or SAUDI ARAMCO Other Property as follows:
>
> *   *   *
>
> SAUDI ARAMCO Other Property
>
> *   *   *
>
> d)   CONTRACTOR [DISA] shall be responsible for the first US$ 1,000,000 (one million) per occurrence of loss and damage to SAUDI ARAMCO Other Property occurring offshore.
>
> *   *   *
>
> 16.2.4   CONTRACTOR's limitation of liability in Paragraphs 16.2.2 shall not apply to any amounts that are recovered or may be recoverable from any insurance policy maintained under this Contract.

36. The Contract also requires DISA, and its subcontractors such as COOEC, to carry insurance, as set forth in Article 17:

> 17.1.2   Comprehensive General Liability
>
> Normal and customary general liability insurance coverage in regards to all the Work, with minimum policy limits for any loss occurring:

Onshore:

of not less than US$ 10,000,000 (ten million) per occurrence for personal injury, death, or property damage, and including sudden and accidental pollution coverage

Offshore:

of not less than US$ 100,000,000 (One hundred million) per occurrence for personal injury, death or property damage, and including sudden and accidental pollution coverage.

17.1.4   Marine Operations

If the performance of this Agreement requires CONTRACTOR to use Marine Craft owned or leased by CONTRACTOR, CONTRACTOR shall carry or require the owners of such Marine Craft to carry marine insurance with policy limits adequate to cover and protect:

\*          \*          \*

(iii)      any other liability, including contractual liability and pollution liability related to this contract, that may result from the operation of such Marine Craft a policy limit of not less than US$ 100,000,000 (one hundred million) per occurrence.

17.2     CONTRACTOR Liable for Full Amount of Losses

SAUDI ARAMCO and CONTRACTOR agree that the insurance coverages listed under Paragraph 17.1 are minimum coverages required to be purchased by CONTRACTOR under this Contract. Should any loss occur for which CONTRACTOR is responsible under this Contract, CONTRACTOR shall be liable for the full amount of the loss (subject to any limitations set forth in Paragraph 16 or otherwise in this Contract), including the amount in excess of CONTRACTOR's insurance limits and including the amount of any deductible specified in CONTRACTOR's insurance policy.

\*          \*          \*

17.5     Subcontracting

If SUBCONTRACTOR sub-subcontracts any part of the WORK, SUBCONTRACTOR shall not require its sub-subcontractors to insure against liability assumed by CONTRACTOR pursuant to Paragraph 16. SUBCONTRACTOR shall require its sub-subcontractors to maintain insurances specified in the sub-

        subcontracts, and shall further require that provisions giving CONTRACTOR and SAUDI ARAMCO the rights specified in Paragraphs 17.3 and 17.4 be included in such sub-subcontracts.

37. Thus, DISA, and by extension DI, remain liable at law for damage to "other property of SAUDI ARAMCO," including the damage alleged to have occurred in the Incident as set forth and as qualified in the Contract.

    **D.    The Policy**

38. The MetLife-ANB Policy was purchased for the explicit purpose of protecting Plaintiffs from property damage occasioned during the work under the Contract.

39. The Policy's "Principal Insureds" include DISA, DII and DISA's parent company, DI.

40. The Policy further extends coverage to the contractors and subcontractors of Plaintiffs as "Other Assureds."

41. The Policy was first "issued" to Plaintiffs on November 14, 2019, when Marsh sent to Plaintiffs the Policy to the Plaintiff via electronic mail. This Policy was delivered to Plaintiffs, two of whom were and are Louisiana subjects, in Louisiana.

42. Moreover, the "original policy document" was physically mailed to Plaintiffs at their mailing address in New Orleans, Louisiana, and physically received here in New Orleans.

43. As such, the Policy in question was delivered or issued for delivery in this state and covers subjects located and resident in this state.

44. MetLife-ANB's Policy clearly provides direct coverage to DISA and DI for their liabilities, and further provides coverage to "[a]ny other company…(including contractors **and/or subcontractors…**) with whom the Insured named in i, ii, ii and iv have entered into written contract(s) directly in connection with the project." There is no factual dispute that COOEC was a subcontractor to DISA under a written contract for the

       Project. Accordingly, the Policy's insuring agreement is triggered by COOEC's negligence.

45. Pursuant to the Policy, MetLife-ANB agrees to pay "damages because of bodily injury or property damage to this this insurance applies."

46. This particular "property damage" was caused by an occurrence that took place in the coverage territory during the Policy period.

47. The Policy is therefore directly obligated to respond to this loss and claim.

48. DISA, and by extension DI, are obligated to SAUDI ARAMCO concerning the reasonable costs and expenses of the required repairs as set forth and qualified in the Contract, and considers all such costs expenses to be amounts reimbursable under the Policy.

49. The current estimate for the repair work necessitated by the damage is $8 million.

50. Although the Policy contains a forum selection clause designating the Kingdom of Saudi Arabia as the choice of law and jurisdiction, enforcement of this forum selection clause would effectively deny Plaintiffs their day in court because it would be unduly burdensome to bring suit against Defendants in the Kingdom of Saudi Arabia. Moreover, this choice of law and forum is in violation of La. R.S. 22:868.

51. In particular, the State of Louisiana has declared as a matter of public policy that no insurance contract delivered or issued for delivery in this state and covering subjects located or resident in this state, shall contain any condition, stipulation, or agreement requiring such insurance contract to be construed according to the laws of any other state or country.

52. The State of Louisiana has further declared as a matter of public policy that no insurance contract delivered or issued for delivery in this state and covering subjects located or resident in this state, shall contain any condition, stipulation, or agreement Depriving the courts of this state of the jurisdiction of action against the insurer.

53. Any and all provisions of the Policy requiring Plaintiffs to litigate the obligations of the Policy outside of this Court are therefore illegal and void.

## FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

54. Plaintiffs incorporate and re-allege the allegations of Paragraphs 1 through 53 as if pled herein.

55. 28 U.S.C. § 2201(a) provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

56. There is a live, justiciable controversy between the parties concerning the interpretation of the Policy.

57. Accordingly, Plaintiffs pray for a declaration concerning the rights and obligations under the Policy, including as follows:

    a. The Policy's choice of law and forum selection clauses are unreasonable, contrary to the public policy of the State of Louisiana as expressed in statute, La. R.S. 22:868, and thus void and invalid as a matter of law;

    b. The Policy's forum selection clause is unreasonable and thus invalid as a matter of law;

    c. Plaintiffs are insureds under the Policy;

    d. Plaintiffs' MetLife-ANB Policy is the primary insurance policy insuring Plaintiffs from liability to SAUDI ARAMCO for damages resulting from the Incident;

e. The Incident was caused during and by the operations of Plaintiffs' subcontractor, COOEC;

f. Plaintiffs' MetLife-ANB Policy provides coverage for damages arising from the Incident;

g. Plaintiffs' MetLife-ANB Policy is a primary insurance policy and not an excess insurance policy;

h. There is no "other insurance" available to Plaintiffs;

i. Plaintiffs' losses are covered under the MetLife-ANB Policy.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT

58. Plaintiffs incorporate and re-allege the allegations of Paragraphs 1 through 57 as if pled herein.

59. Plaintiffs are insureds under the Policy.

60. The Policy obligates Defendants to defend and indemnify Plaintiffs from Losses covered by the Policy.

61. The Losses attributable to the Incident, and for which Plaintiffs may be liable, are covered by the Policy and subject to the obligations of defense and indemnity as set forth in the Policy.

62. Despite repeated request for coverage under the Policy, Defendants have not accepted that the Policy provides coverage for the Incident.

63. The refusal to accept coverage is a breach of the terms of the Policy.

## THIRD CAUSE OF ACTION – CLAIM AGAINST AGENT

64. Plaintiffs incorporate and re-allege the allegations of Paragraphs 1 through 63 as if pled herein.

65. In the alternative, if there is no coverage under the Policy, then Marsh is liable to Plaintiffs for damages caused by its failure to procure the requested coverage that would

have included coverage for the damage arising from the Incident, and for any failures to timely and properly place and bind the requested insurance.

66. Plaintiffs specifically engaged Marsh as the company's exclusive agent to procure necessary insurance for the operations set forth in the Contract.

67. In particular, over the course of many meetings, Plaintiffs provided Marsh with all information relating to the Project, including contracts that consisted of several hundreds of pages, and included detailed insurance requirements.

68. Plaintiffs are not experts or sophisticated users in the insurance world, and thus rely upon brokers like Marsh to understand, explain and procure insurance required for their operations.

69. At no time did anyone from Marsh tell Plaintiffs that the Policy they procured was an "excess" insurance policy. In fact, based upon the premiums charged, Plaintiffs understood the Policy to afford primary insurance protection to Plaintiffs.

70. Marsh breached its duty of due diligence to procure the insurance requested by Plaintiffs and/or as called for in the Contract.

71. Marsh never advised Plaintiffs that the Policy procured was an excess policy that would not provide primary coverage in the event of a loss.

72. Furthermore, the first time that Plaintiffs were provided the actual, written Policy was November 19, 2019, via electronic mail from a representative of Marsh.

73. This occurred after notification of the Incident and the loss to Plaintiffs, and, from the limited information available to Plaintiffs, it is unclear if and how the original binding of the necessary insurance coverage and placement occurred.

74. Marsh also breached its duty to disclose to Plaintiffs that the insurance it had procured did not fulfill Plaintiffs' request to provide coverage as required in the Contract.

75. As a result of these breaches, Marsh is liable for all damages Plaintiffs have incurred and will continue to incur as a result of these breaches of duty, plus interest and costs.

### FOURTH CAUSE OF ACTION – CLAIM AGAINST METLIFE-ANB OWNERSHIP GROUP

76. Plaintiffs incorporate and re-allege the allegations of Paragraphs 1 through 63 as if pled herein.

77. Beginning in June of 2019, MetLife-ANB began discussions with Walaa concerning a possible merger of the two insurers.

78. On or about September 29, 2019, MetLife-ANB signed a binding merger agreement whereby Walaa acquired the stock of MetLife-ANB through a share swap (the "Transaction").

79. The Transaction became effective in March of 2020.

80. The Policy at issue was a liability of MetLife-ANB, and is a liability that arose prior to the Transaction and is therefore one for which the sellers of MetLife ANB remain liable as part of the Transaction.

81. As such, and based on information and belief, Defendants ALICO and AIG-MEA have liability, in their individual capacities, for the retained liability relating to the Policy, in their respective shares of ownership.

## JURY DEMAND

82. Plaintiffs pray for trial by jury on all issues so triable under the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a. Issuing a Declaratory Judgment declaring the Parties' rights and obligations under the Policy, as prayed for;

b. Awarding amounts for losses and liabilities covered by the Policy;

c. Ordering Defendants to provide defense and indemnity to Plaintiffs for the Incident;

d. Awarding Plaintiffs all fees and costs incurred in prosecuting this action; and

e. Such other relief as this court deems just and proper.

Respectfully submitted,

*/s/ L. Etienne Balart*
EDWARD D. WEGMANN (La. #13315)
L. ETIENNE BALART (La. #24951), T.A.
LAUREN C. MASTIO (La. #33077)
TAYLOR K. WIMBERLY (La. #38942)
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana  70170-5100
Telephone: 504-582-8584
Facsimile:  504-589-8584
Email: ebalart@joneswalker.com
         dwegmann@joneswalker.com
         lmastio@joneswalker.com
         twimberly@joneswalker.com

*Attorneys for Plaintiffs*