**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| **DYNAMIC INDUSTRIES, INC., DYNAMIC INDUSTRIES INTERNATIONAL, LLC and DYNAMIC INDUSTRIES SAUDI ARABIA, LTD.**<br><br>**VERSUS**<br><br>**METLIFE - AMERICAN INTERNATIONAL GROUP - ARAB NATIONAL BANK COOPERATIVE INSURANCE COMPANY; ET AL.** | **CIVIL ACTION NO. 2:21-cv-748**<br><br>**JUDGE IVAN L.R. LEMELLE**<br><br>**MAGISTRATE JUDGE JANIS VAN MEERVELD** |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**
**FOR *FORUM NON CONVENIENS* [R. DOC. 45]**

Dynamic Industries, Inc. ("DI"), Dynamic Industries International, LLC ("DII") and Dynamic Industries Saudi Arabia, Ltd. ("DISA") (collectively, "Plaintiffs") oppose the Motion to Dismiss for *Forum Non Conveniens* [R. Doc. 45], filed on behalf of Walaa Cooperative Insurance Co. ("Walaa"), in its own right and as successor in interest to Metlife - American International Group - Arab National Bank Cooperative Insurance Company ("MetLife-AIG-ANB" or "MAA"). As explained herein, the forum selection clause contained in the insurance policy at issue contravenes Louisiana public policy and must be disregarded. As alleged in the First Amended Complaint, and as further supported in the Declaration and exhibits submitted herein, this Policy was issued and delivered in Louisiana to Louisiana insureds. Furthermore, the private interest and public policy factors of *forum non conveniens* weigh in favor of keeping this insurance coverage dispute involving a Louisiana policy of insurance delivered to Louisiana residents in this Court.

## FACTUAL BACKGROUND

As the Court knows, Defendants filed multiple motions to dismiss, all of which Plaintiffs oppose. To conserve judicial resources and prevent duplication of pleadings, exhibits, and arguments, in accordance with Federal Rule of Civil Procedure 10(c), Plaintiffs hereby incorporate by reference the factual background set forth in their previously filed Memorandum in Opposition to Motion to Dismiss [R. Doc. 65] as well as the factual background contained in their second-filed Memorandum in Opposition to Motion to Dismiss [R. Doc. 66-1 and 66-2],[1] as if set forth herein *in extenso*.

In addition, also in accordance with Federal Rule of Civil Procedure 10(c), Plaintiffs hereby incorporate by reference all arguments, facts, law and exhibits contained in Plaintiffs' previously filed Memorandum in Opposition to Motion to Dismiss [R. Doc. 65] and in Plaintiffs' second-filed Memorandum in Opposition to Motion to Dismiss [R. Doc. 66-1 and 66-2].

## LAW AND ARGUMENT

Walaa seeks dismissal of this lawsuit on the basis of *forum non conveniens*, arguing that the choice of arbitration/ proceeding before a quasi-judicial IDC in Saudi Arabia controls, and this forum is inconvenient. Nevertheless, as explained below, the motion should be denied.

## I. *Forum Non Conveniens*

In *Atlantic Marine Construction Co. v. United States District Court*, the U.S. Supreme Court held that *forum non conveniens* is the proper mechanism to enforce a valid forum selection clause that points to a foreign tribunal.[2] Nonetheless, unlike this case, in *Atlantic Marine*, the parties did not dispute the validity of the forum-selection clause. Indeed, the Court noted that its

---

[1] Plaintiffs note that in light of page limitations, Plaintiffs filed a Motion for Leave to File this Memorandum in Opposition. Nonetheless, Plaintiffs respectfully request that they be allowed to incorporate said Opposition in accordance with Rule 10(c).
[2] 571 U.S. 49 (2013).

analysis "presuppose[d] a contractually valid forum-selection clause."[3] Here, Dynamic disputes the validity of the forum selection clause contained in the Policy and contends that it violates a strong public policy of Louisiana, and is thus invalid and unenforceable.

In accordance with U.S. Fifth Circuit precedent, federal law governs the enforceability of forum selection clauses.[4] Under federal law, a party attacking a forum selection clause must overcome a presumption of enforceability by showing that the clause is "unreasonable" under the circumstances because:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[5]

Accordingly, before this Court even considers *forum non conveniens*, it must determine whether the Policy contains a valid forum selection clause.

### A. The forum selection clause is unenforceable because it contravenes a strong public policy of Louisiana.

When a federal district court interprets state law, it must do so according to principles of interpretation followed by that state's highest court.[6] In Louisiana, a civil law jurisdiction, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[7] Legislation is the solemn expression of legislative will,[8] and, thus the interpretation of legislation is primarily the search for legislative intent.[9] The starting point for

---

3 *Id*. at 581, n. 5.
4 *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 301 (5th Cir. 2016) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)).
5 *Id*. at 301.
6 *Jones Motor Grp., Inc. v. Hotard*, 135 F. Supp. 3d 530, 535 (E.D. La. 2015).
7 *Id*. (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004)).
8 La. Civ. Code art. 2.
9 *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p. 15 (La. 10/20/98); 720 So. 2d 1186, 1198.

interpretation of any statute is the language of the statute itself.[10] When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of legislative intent.[11] Moreover, a statute must be interpreted and applied in a manner logically consistent and with the presumed fair purpose and intention of the legislature in passing it.[12] It is presumed that the legislature intends to achieve a consistent body of law.

Louisiana Revised Statutes 22:868, as amended in August 2020, provides in pertinent part:

A.    No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:

(1)    Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.

(2)    Depriving the courts of this state of the **jurisdiction or venue** of action against the insurer.[13]

By its clear and express language, any contract of insurance delivered or issued in Louisiana to a Louisiana resident cannot contain a forum selection clause depriving the courts of Louisiana of **jurisdiction or venue**, as such a clause is against a strong public policy of Louisiana — that public policy being the regulation of insurance and protection of Louisiana insureds.

After the 2018 U.S. Fifth Circuit decision of *Al Copeland Invs., LLC v. First Specialty Ins. Corp.*[14] and the 2019 Louisiana Supreme Court decision of *Creekstone/Juban I, LLC v. XL Ins. Am. Inc.*[15] both held that Section 22:868 did not prohibit forum selection clauses in contracts of

[10] *Id.*
[11] LA. CIV. CODE art. 9.
[12] *MAW Enterprises, LLC v. City of Marksville*, 14-0090, p. 12 (La. 09/03/14); 149 So. 3d 210, 218.
[13] LA. REV. STAT. § 22:868 (emphasis added).
[14] 884 F.3d 540 (5th Cir. 2018).
[15] 2018-0748 (La. 05/08/19); 282 So. 3d 1042.

insurance, the Louisiana legislature specifically amended 22:868 to overrule both cases and reinforce the intent of 22:868. Specifically, in *Creekstone*, the Louisiana Supreme Court noted that Section 22:868 only mentioned jurisdiction and "sa[id] nothing about venue" and, thus, allowed enforcement of forum selection clause mandating disputes be resolved in a court in New York. Considering the cited lack of clarity, through Senate Bill No. 156 enacted and effective August 1, 2020, the Louisiana legislature amended Section 22:868(A)(2) to add "or venue" thereby making clear that forum selection clauses contained in policies of insurance delivered in Louisiana to a Louisiana resident are against Louisiana public policy and unenforceable.[16] Stated differently, no insurance contract may deprive a Louisiana court of jurisdiction or venue, where that contract is issued for delivery or delivered in Louisiana to a Louisiana resident.

With respect to arbitration clauses, historically, Louisiana courts have consistently held that a clause in an insurance contract requiring arbitration is against Louisiana public policy as set forth in Section 22:868, because such clauses deprive the Louisiana court of "jurisdiction."[17] The Louisiana Supreme Court reached this same conclusion in *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982) (citing *Macaluso*, 171 So. 2d 755) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable.").[18]

---

[16] *See, e.g.*, LA. REV. STAT. § 51:1407 (precluding forum selection clauses in contracts subject to the Louisiana Unfair Trade Practices Act); LA. REV. STAT. § 9:2779 (proscribing forum selection clauses in a subset of construction contracts); and LA. REV. STAT. § 23:921(A)(2) (prohibiting forum selection clauses in employment contracts).

[17] *Macaluso v. Watson*, 171 So.2d 755 (La. App. 4 Cir. 1965); *Courville v. Allied Professionals Ins. Co.*, 16-1354, p. 5 (La. App. 1 Cir. 4/12/17); 218 So. 3d 144, 148, *writ denied*, 17-0783 (La. 10/27/17); 228 So. 3d 1223 ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."); *Hobbs v. IGF Ins. Co.*, 02-26, p. 3 (La. App. 3 Cir. 10/23/02), 834 So. 2d 1069, 1071 ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer.").

[18] *Cf.* LA. CIV. CODE art. 9; LA. REV. STAT. 1:4.

Accordingly, Section 22:868 makes clear that no contract of insurance can contain a clause which requires a Louisiana insured to arbitrate or which requires a Louisiana insured to litigate in a foreign venue. As set forth herein, because the Policy was issued and delivered in Louisiana to a Louisiana resident, the forum selection clause mandating arbitration or proceeding before a quasi-judicial IDC in Saudi Arabia is unenforceable as against the clear and unequivocal public policy of Louisiana. Indeed, the forum selection clause violates Section 22:868 two-fold.

### B. Louisiana Revised Statutes 22:868 applies to the Policy.

#### 1. The Policy was issued and delivered to Dynamic in New Orleans, Louisiana.

Contrary to Walaa's contention, the provisions of the Louisiana Insurance Code apply to the Policy, which was issued and delivered to two Louisiana residents, Dynamic Industries, Inc. and Dynamic Industries International, LLC. As detailed above, the Policy was first electronically mailed to Dynamic by Marsh KSA on behalf of the insurers on November 14, 2019.[19] (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 5, ¶¶ 35-36). Moreover, the hard copy of the Policy was then **actually physically delivered to Dynamic and received by Dynamic in New Orleans, Louisiana**. (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 5, ¶¶ 35-36). All the while, Dynamic had negotiated the policy through Marsh USA and its local office in New Orleans, Louisiana, as shown in the Declaration submitted herewith. (*See generally*, R. Doc. 65-1, Declaration of Mark Mahfouz).

Walaa's reliance on *McDermott Int'l, Inc. v. Lloyds Underwriters of London*,[20] is inapposite. In *McDermott*, a London insurance broker negotiated the policy terms in London on

---

[19] *See* LA. REV. STAT. § 22:2462 (confirming that any insurance document may be delivered by electronic means and that such electronic delivery "shall be considered equivalent to and have the same effect as any delivery method required by law.").

[20] 120 F.3d 583 (5th Cir. 1997).

behalf of the insured and the original policy was delivered to the insured's broker in London. Citing *Pruitt v. Great Southern Life Ins. Co.*,[21] the U.S. Fifth Circuit noted that in determining whether an insurance policy has been "delivered," the Louisiana Supreme Court looks to three requirements: (1) whether the company or its agent intentionally parts with control or dominion of the policy; (2) whether the company or its agent places the policy in the control or dominion of the insured or some person acting for him; and (3) the underlying purpose of the delivery is to make valid and binding a contract of insurance.[22] Moreover, it is also "well-settled that delivery orchestrated to avoid the application of Louisiana law will not be sanctioned."[23]

Here, Dynamic utilized the brokerage services of Marsh USA **in New Orleans** to procure the Policy. Dynamic, at all times, negotiated the Policy **in New Orleans** with the assistance of a Marsh USA broker **in New Orleans**. (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 2-4, ¶¶ 5-33). Marsh USA in conjunction with Marsh KSA then ultimately procured the Policy on behalf of the Dynamic entities, albeit at differing time periods. Indeed, Dynamic relied upon and paid Marsh USA to procure the necessary insurance protecting the Dynamic entities from any loss as required under the Contract. (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 2, ¶ 11).

After the original placement, Dynamic never received a copy of the Policy, because no policy was created, issued or delivered. It was not until after the claim and incident that Dynamic learned that the Policy had not been procured. What followed were weeks of back and forth emails and negotiations between Dynamic (and Marsh USA on one hand) and Marsh KSA acting on behalf of MetLife-AIG-ANB. This resulted in the issuance of the Policy in mid-November 2019, which was emailed and mailed to Dynamic here in New Orleans. (R. Doc. 65-1, Declaration of

---

[21] 12 So. 2d 261 (La. 1942).
[22] *McDermott*, 120 F.3d at 586 (citing *Pruitt*, 12 So. 2d at 262).
[23] *Grubbs v. Gulf Int'l Marine, Inc.*, 13 F.3d 168, 171-72 (5th Cir. 1994); *Schexnider v. McDermott Int'l, Inc.*, 688 F. Supp. 234, 237-38 (W.D. La. 1988).

Mark Mahfouz, at p. 5, ¶ 35). A copy of the Policy was never delivered to Dynamic in Saudi Arabia. (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 5, ¶ 36). As explained in Dynamic's Memorandum regarding Walaa's other Motion to Dismiss (R. Doc. 65), the Policy was both actually delivered to Louisiana and "issued for delivery" in Louisiana. Indeed, the phrase "issued for delivery" meets the exact fact scenario here, where the Policy was "issued" in Saudi Arabia for delivery in Louisiana.

Unlike *McDermott*, the Policy was **actually** delivered **to Dynamic in New Orleans** by both electronic mail and **in hard copy**. By this delivery of the Policy via both electronic **and in hard copy** to New Orleans, the parties intended to make a valid and binding contract of insurance. There can be no doubt that an insurance policy actually physically delivered to an insured in Louisiana should be considered a policy "issued and delivered" in Louisiana in accordance with the Louisiana Insurance Code. The fact that the Policy may have listed different addresses not in Louisiana does not change the undisputed fact that the Policy was actually physically delivered to Dynamic **in New Orleans**. The Policy was never delivered to any Dynamic entity in Saudi Arabia. (R. Doc. 65-1, Declaration of Mark Mahfouz, at p. 5, ¶ 36).

## 2. The Policy does not qualify as "ocean marine" or "foreign trade insurance."

Walaa argues that the Policy is exempt from the Louisiana Insurance Code, in an effort to avoid the application of Section 22:868. Louisiana Revised Statutes § 22:851 excludes certain provisions of the Insurance Code from applying to "ocean marine and foreign trade insurances." The Insurance Code further defines "ocean marine insurance" to mean insurance:

> . . . which insures against maritime perils or risks and other related perils or risks, which are usually insured against **by traditional marine insurances** such as hull and machinery, marine builders' risks, and marine protection and indemnity. Such perils and risks insured against include without limitation loss, damage, or expense or legal liability of the insured for loss, damage, or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair, or construction of any

vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for loss of or damage to the property of the insured or another person, except this definition shall not include insurance on vessels under five tons gross weight.[24]

Walaa maintains, without any support, that the Policy qualifies as "ocean marine insurance."

Yet, Walaa's argument blatantly ignores that the Policy is a Comprehensive General Liability ("CGL") policy of insurance **clearly not** an "ocean marine" policy of insurance:

> **"COMPREHENSIVE GENERAL LIABILITY"**

(R. Doc. 65-1, Exhibit A-5, Insurance Policy, at p. 20). Indeed, as with any typical CGL policy, the Policy afforded insurance coverage for bodily injury and property damage claims arising from all operations of Dynamic, not just marine risks. Although these operations included both land and sea components, the Policy cannot be considered an "ocean marine" policy. It was not a hull and machinery policy, a marine builders' risk policy, or a marine protection and indemnity policy, the traditional forms of "ocean marine insurance." Rather, it is undisputed that the Policy issued to Dynamic was a Comprehensive General Liability policy. Simply because the Policy may afford coverage to an accident with a "salty" maritime flavor, does not transform that policy into an "ocean marine" policy under the Louisiana Insurance Code.

Moreover, the Policy does not qualify as "foreign trade insurance" either. The Policy covered a construction and demolition project off the coast of Saudi Arabia, it did not provide insurance for the exchange of goods. In utilizing the "generally prevailing meaning based on context and common usage," the Policy does not insure "foreign trade." Walaa's arguments are unavailing.

---

[24] LA. REV. STAT. § 22:46(11.1)

### 3. The Policy was issued and delivered in Louisiana and provides coverage to a Louisiana resident, Dynamic.

Finally, not only was the Policy issued and delivered in Louisiana to Dynamic, the Policy covers two Louisiana residents, thereby satisfying the conjunctive requirement of Louisiana Revised Statutes § 22:868(A). Section 22:868(A) provides: "[n]o insurance contract delivered or issued for delivery in this state **and** covering subjects located, **resident**, or to be performed in this state . . ." shall contain a provision depriving Louisiana state courts of jurisdiction or venue. Citing no case law, Walaa contends that because the subject of the Policy is the Project, the Policy does not satisfy the requirements of 22:868(A). In support thereof, Walaa maintains that it is improper to equate the word "subjects" with the insured entities covered by the Policy, because such a construction would render the first clause of 22:868(A) superfluous. Specifically, Walaa argues that if a policy is delivered or issued in Louisiana, it necessarily was delivered/issued to a Louisiana-based entity, and, thus "resident" cannot simply mean a resident insured entity.[25]

Walaa's interpretation of the statute ignores the very purpose of the Louisiana Insurance Code and contravenes the entire public policy premise of same. Section 22:868 clearly states that it applies to subjects "resident" in Louisiana, i.e Louisiana insureds. Walaa impermissibly requests this Court to simply ignore the plain language of the statute that makes clear that Section 22:868 applies to insurance policies delivered in Louisiana and covering Louisiana residents. Indeed, the entire purpose of the Louisiana Insurance Code is to protect Louisiana insureds. As noted by an authoritative legal icon, Section 22:868 (formerly 22:629):

> [I]ncorporates a public policy determination that no contract issued in Louisiana covering a Louisiana subject shall deny the Louisiana insured the benefit of a practical remedy in Louisiana courts, thus prohibiting a requirement that he litigate his claim in an inconvenient foreign forum or submit to its adjudication by some

---

[25] *See* R. Doc. 45-1, at p. 15.

private tribunal. The statute's command must be enforced, by reason of which the policy condition is void as violating the statutory prohibition.[26]

The plain language of Section 22:868 (and the entire Insurance Code) evidences the Louisiana legislature's desire to protect Louisiana insureds, and is contrary to Walaa's interpretation of "subjects."

All that matters is that a Louisiana resident is involved in the Policy, and those Louisiana residents are the parties exposed to the risk here in New Orleans even though the loss occurred in Saudi Arabia. Two of the insureds are Louisiana residents. Dynamic Industries International, LLC is a Louisiana company. (R. Doc. 35, at p. 2, ¶ 3). Dynamic Industries, Inc., also a principal insured, is a Louisiana corporation. (R. Doc. 35, at pp. 1-2, ¶ 2). Indeed, in accordance with the Parent Company Performance Guarantee, DI **in New Orleans** bears the ultimate risk on this Policy, as the guarantee rendered DI liable for the obligations of DISA under the Contract.

**4.    Section 22:868(D) exemptions does not apply to the Policy.**

Lastly, the exemption provided in Section 22:868(D) does not apply to the Policy. In the August 2020 amendment to Section 22:868, the Louisiana legislature added subsection (D), which provides: "[t]he provisions of Subsection A [prohibition of forum selection clauses] shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."[27] Walaa contends that because it "hypothetically" could be considered a "surplus lines insurer" under Louisiana law, Walaa is not subject to form approval in Louisiana, and, thus exempt under 22:868(D). This argument is both self-satisfying and erroneous.

Contrary to Walaa's argument, the Policy is "subject to approval" by the Department of Insurance, because in accordance with Louisiana Revised Statutes Section 22:861, "no basic

---

[26] *Lawrence v. Continental Insurance Company*, 199 So. 2d 398 (La. App. 3 Cir. 1967) (Tate, J.).
[27] LA. REV. STAT. § 22:868(D).

insurance policy form . . . shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance."[28] The Policy, as a comprehensive general liability policy, would be "subject to" approval by the Louisiana Department of Insurance ("LDI"). It is a basic insurance policy form. Even if the Policy was not actually approved by the LDI, such lack of approval does not result in Section 22:868(D)'s application.[29]

Although the Louisiana Insurance Code exempts "surplus lines insurance" from form approval requirements, the Louisiana Insurance Code specifically imposes certain other requirements upon surplus lines insurance and surplus lines brokers.[30] Indeed, as noted in the Insurance Code, the Louisiana legislature specifically enacted certain requirements for surplus lines insurance to promote certain underlying purposes which includes "[p]rotecting persons seeking insurance in this state."[31] With that purpose in mind, Sections 22:432 to Section 22:446 of the Insurance Code impose various requirements upon such insurance. Because the Insurance Code imposes these other requirements, the Insurance Code then exempts approved surplus lines insurers from the form requirements.[32] In other words, if a surplus lines insurer follows the provisions of the Insurance Code and issues a special form of coverage in a policy form that is not subject to approval -- *i.e.* something other than a comprehensive general liability form -- this policy form is exempt. The Louisiana legislature determined that such insurance companies can negotiate forum selection clauses in their bespoke policies of insurance, *i.e.* non-traditional policy forms. In sum, surplus lines insurers are subject to certain requirements pronounced by the Insurance Code and the LDI. These authorized surplus lines insurers may take advantage of the 22:868(D)'s

---

[28] LA. REV. STAT. § 22:861(A)(1).
[29] Such a result would be absurd. By Walaa's argument, any insurance carrier whose form was not approved by the LDI could issue **standard** policies of insurance in violation of the law.
[30] *See* LA. REV. STAT. §§ 22:431-22:446.
[31] LA. REV. STAT. § 22:431.
[32] LA. REV. STAT. § 22:868(D).

exception to the prohibition of forum selection clauses, but only because the policy form is not a typical form subject to approval and because the LDI regulates this insurance in other ways.

On the one hand, Walaa "rejects any basis for the authority or jurisdiction of the [LDI] over Walaa," but on the other wishes to take advantage of the exemption contained in Section 22:868(D). Simply put, Walaa denies that the LDI or Insurance Code applies to it, but in the same tack seeks to take advantage of provisions of the Insurance Code. The entire purpose of the Louisiana Insurance Code is to regulate the issuance of policies of insurance in Louisiana to Louisiana residents. Walaa cannot in one breath deny any application of the Louisiana Insurance Code, but in the other seek the protections afforded under that Code to certain authorized insurers — to do so would undermine the very purpose of the legislation: the regulation of insurance policies delivered and issued in Louisiana.

For these reasons, Section 22:868(A) applies to the Policy, which was delivered and issued in Louisiana to two Louisiana residents, and the forum selection and arbitration clause is not valid.

## II.    Dismissal in accordance with *forum non conveniens* is improper regardless of the forum selection clause.

Even if the forum selection clause contained in the Policy was valid and enforceable, which it is not, an analysis of the private and public interest factors of *forum non conveniens* as applied to this insurance dispute involving Louisiana insureds dictate that dismissal is improper.[33]

To dismiss a case on *forum non conveniens* grounds, a court must first find that an adequate and available alternative forum exists for the parties to litigate their claims.[34] If such a forum exists, the court weighs a number of public and private interest factors to determine whether the case

---

[33] Plaintiffs recognize that as set forth in *Atlantic Marine*, in the face of a valid forum selection clause, the analysis for *forum non conveniens* changes. Nevertheless, because Plaintiffs dispute the validity of the forum selection clause, Plaintiffs discuss both the private and public interest factors for the sake of completeness.

[34] *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 211 (5th Cir. 2010).

should be dismissed in favor of that forum.[35] A court, however, does not engage in a straight balancing test: depriving the plaintiff of his chosen forum is an exceptional outcome, only appropriate when the balance is "strongly in favor of the defendant."[36] The Supreme Court has made clear that a plaintiff "should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which . . . establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience . . . ."[37]

The defendant bears the burden of moving to dismiss in favor of a foreign forum and this burden applies to all of the elements of a *forum non conveniens* analysis.[38] The burden on the defendant seeking *forum non conveniens* dismissal is a strong one: the cases "make it clear that dismissal is to be the exception, not the rule, and there must be a strong showing that the alternative forum would be significantly more convenient and better serve justice than the one chosen by the plaintiff."[39] "When performing the *forum non conveniens* factor-based analysis, the 'ultimate inquiry' for the court is to determine 'where the trial will best serve the convenience of the parties and the ends of justice.'"[40]

Alternative-forum analysis requires a court to determine whether "all parties can come within the jurisdiction" of the alternative forum and whether parties will be "deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court."[41] The defendant seeking dismissal under *forum non conveniens* bears the burden of establishing that the alternative forum is both available and adequate.

---

[35] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[36] *Id.*

[37] *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

[38] *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir. 1987).

[39] 14D Charles A. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3828, (3d ed. 2007).

[40] *Clough v. Perenco, LLC*, 2007 U.S. Dist. LEXIS 61198 at * 1 (S.D. Tex. Aug. 21, 2007)

[41] *Saqui*, 595 F.3d at 211-12 (quotation marks and citation omitted).

Once a court determines there is an available and adequate alternative forum, it may then proceed to balance whether the private interest factors weigh in favor for or against dismissal.[42] Relevant private factors include: (1) access to sources of proof; (2) availability of compulsory process to ensure attendance of unwilling witnesses; (3) possibility of viewing premises, if viewing is appropriate in the litigation; (4) other practical problems that affect the trial, including enforceability of judgment and whether the plaintiff has selected an improper forum to harass the defendant.[43]

If the private factors do not weigh in favor of dismissal, the court must then consider public interest factors. Public interest factors include: (1) administrative difficulties regarding court congestion; (2) local interest in having localized controversies decided at home; (3) interest in having a diversity case in a forum familiar with the law; (4) unnecessary problems with conflicts of law, or applying foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury service.[44]

### A.     Saudi Arabia is not an adequate and available forum.

As an initial matter, Saudi Arabian arbitration/ dispute resolution before the quasi-judicial IDCs is not an adequate and available forum. First, Marsh USA, a named party, is likely not subject to suit or arbitration in Saudi Arabia. Nor is Marsh. Two of the defendants who were intricately involved in the procurement and negotiation of this Policy would not be involved in any proposed Saudi Arabian arbitration or proceeding before the IDC. Without these parties participating, a Saudi Arabia does not serve as an adequate and alternative forum.[45]

---

[42] *Vasquez*, 325 F.3d at 672.
[43] *Moreno v. Lg Elecs., USA Inc.*, 800 F.3d 692, 700-701 (5th Cir. 2015)
[44] *Id*.
[45] *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002) ("an alternative forum is available if 'the entire case and **all parties** can come within the jurisdiction of that forum.'") (emphasis added).

Moreover, as noted in Plaintiffs' facts, 85% of the risk insured has been reinsured to other unknown insurance companies. Once Plaintiffs discover the identity of these insurers, Plaintiffs intend to add them to this lawsuit. It is likely that these reinsurers are located in London, as the center of reinsurance, and these parties would not be subject to suit or arbitration in Saudi Arabia.

Finally, Walaa has offered no proof to this Court that "arbitration" or a proceeding before the quasi-judicial IDC in Saudi Arabia is binding or can be enforced. Unlike the Federal Arbitration Act or state equivalents, which provide a mechanism for the enforcement of arbitration awards, Walaa has not provided any evidence that moving forward with an arbitration or proceeding before the IDC in Saudi Arabia would produce a judgment that could be enforced. Stated differently, assuming Plaintiffs could arbitrate or proceed in Saudi Arabia, Walaa has provided no evidence that such an award could be enforced. Although Walaa briefly cites to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"),[46] Walaa provides no explanation of how any award or decision issued by the IDC can actually be enforced against the parties. An arbitration or proceeding award without an enforcement mechanism is worthless, and certainly does not qualify as an available and adequate forum.

Moreover, Walaa's *ipse dixit* declaration that the IDCs "provide broad and procedural substantive benefits and rights" fails to actually explain any procedural or substantive benefits offered to the parties before the IDC. Indeed, a review of Rule 44.1 Declaration and attendant Exhibits relied upon by Walaa, offer no actual explanation of the adequacy of the IDC and its procedures. Although the guidelines note that the IDCs "apply the provisions of the Law of Procedure before the Sharia Courts,"[47] Walaa offers no explanation of how such procedures and laws compare to those of this Court. For example, Walaa provides no explanation of procedures

---

[46] R. Doc. 45-1, at p. 13.
[47] R. Doc. 45-5, at p. 21.

for pre-trial discovery, depositions, exchange of written documents, etc. In short, Walaa has failed to meet its burden of proof with respect to showing an alternative and adequate forum exists.

In sum, arbitration or a proceeding before the IDC in Saudi Arabia provides neither an adequate nor available alternative forum.

> **B.** **The private and public interest factors weigh in favor of this Louisiana court determining an insurance coverage dispute for a policy of insurance issued and delivered in Louisiana.**

Even if arbitration/proceeding before an IDC in Saudi Arabia was an available and adequate forum, the private and public interest factors militate against dismissing Plaintiffs' claim for *forum non conveniens*.

Private Interest Factors:

- *Relative access to sources of proof and availability of compulsory process*: Here, evidence related to coverage under the Policy consists almost entirely of written documents in electronic format. In other words, there is little to no physical evidence actually located in Saudi Arabia that could not be produced electronically without problem. The relevant evidence is the Policy, the contracts and the communications between these parties. Witnesses relative to the coverage dispute are located both in New Orleans and Saudi Arabia, and possibly in other locales like London. Because witnesses are located in both the United States and Saudi Arabia, and mostly under the control of the parties, dismissal to Saudi Arabia is not warranted.[48] In other words, even if this Court dismissed this action, the Saudi Arabian forum would still face difficulties compelling witnesses for attendance,

---

[48] *See Bund Zur Unterstutzung Radargeschadigter E.V. v. Raytehon Co*., No. 04-127, 2006 U.S. Dist. LEXIS 97644, at *8 (W.D. Tex. Aug. 30, 2006) (discounting importance of witness location when witnesses were located in both Germany and the United States); *Kimberly-Clark Corp. v. Cont'l Cas. Co*., No. 05-0475 2005 U.S. Dist. LEXIS 24266 (N.D. Tex. Oct. 19, 2005) (stating that because witnesses were located in both Brazil and the United States, dismissal was not supported).

even more so given the fact that Walaa has not demonstrated that arbitration or a quasi-judicial IDC provides a means of compelling a witness.

- *Possibility of viewing premises*: This private interest factor is irrelevant. It is not necessary for the parties to physically view the damaged pipeline to determine coverage under the Policy. The only coverage issue pertains to the interpretation of the Policy and the applicable contracts, and whether the Plaintiffs are liable for repairs. The coverage determination can be made without regard to an inspection of the pipeline.

- *Practical problems/ harassment*: First and foremost, Plaintiffs did not file suit in this Court to harass or oppress the defendants. Rather, Plaintiffs sought redress in this Court because the Policy was delivered and issued in Louisiana and provides coverage for Louisiana residents. Walaa has cited a litany of practical problems that are red herrings. This claim involves the interplay of the applicable contracts and the Policy. The primary and fundamental questions for this coverage dispute are the interpretation of the Contract and the Policy, and whether there is a potential liability under the Contract covered by the Policy, as a matter of the Contract not as a matter of who or what caused the Incident. Stated differently, whether coverage exists under the Policy as stated in the Complaint can be determined, and if there is coverage afforded to Plaintiffs, Walaa (or MetLife-AIG-ANB, or the reinsurers) can decide whether other parties should be pursued via subrogation, the amount of repairs necessary and any other of the myriad issues that insurers deal with after deciding to cover a loss. The Policy at issue specifically includes Plaintiffs' contractual liability to Saudi Aramco as a covered peril. Moreover, in today's modern world with video conferencing technology and other similar capabilities, the parties will be able to complete discovery with fewer practical problems than in years past.

Public Interest Factors:

- *Administrative difficulties flowing from court congestion*: Walaa has not identified any administrative difficulties of proceeding in this Court. Rather, Walaa just notes that dismissal of this case would relieve this court's congestion. Nonetheless, that is not the relevant inquiry. This factor focuses on a potential delay in the alternative forum. For example, one court held that evidence of extreme delay in the alternative forum militated against dismissal for *forum non conveniens*.[49] Here, the parties would undeniably proceed to trial quicker than in any Saudi Arabian quasi-judicial proceeding or an arbitration. A typical Scheduling Order issued by this Court would guarantee that the parties proceed to trial within a year.

- *Local interest in having localized controversies resolved at home*: Here, there is a local interest in having a localized controversy decided in Louisiana. Louisiana has an interest in this case by virtue of the citizenship of two Dynamic entities and by virtue of the fact that the Policy was issued and delivered to Louisiana residents, after negotiation with a broker in New Orleans to procure that policy. There is a strong interest in allowing Plaintiffs to proceed in their chosen American forum.[50]

- *Interest in having the trial in a forum at home with the governing law*: Again, the Policy was issued and delivered in Louisiana to Louisiana residents. As such, Louisiana law will apply.

---

[49] *Bhatnagar v. Surrendra Overseas Ltd*., 52 F.3d 1220, 1228 (3d Cir. 1995) (holding that evidence of "profound" and "extreme" delay, averaging between ten and fifteen years to process cases in India, rendered India an inadequate forum).

[50] *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1104 (11th Cir. 2004) ("[T]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction . . . .") (citation omitted).

- *Avoidance of unnecessary problems in conflict of laws*: The fact that foreign law may govern a case "is not in itself reason to apply the doctrine of forum non conveniens" and grant a dismissal.[51] Courts must not be "relucta[nt] to undertake the task of deciding foreign law, a chore federal courts must often perform."[52] Moreover, numerous federal courts have interpreted Saudi law.[53] Nevertheless, this matter will be governed by Louisiana law.

- *Unfairness of burdening citizens in an unrelated forum with jury duty*: This case involves both citizens of the United States and citizens of Saudi Arabia. Louisiana citizens will obviously have an interest in a case involving a policy of insurance issued and delivered to Louisiana residents and providing coverage to those Louisiana residents. Just because the underlying incident occurred off the coast of Saudi Arabia does not discount the fact that a Louisiana juror would have an interest in an insurance dispute involving a Louisiana insured.

Quite simply, evidence and witnesses relative to this case exist in both New Orleans and Saudi Arabia, and likely other locales. Because, the *forum non conveniens* doctrine "should not be invoked simply to shift the inconvenience from one party to another,"[54] Walaa's request for dismissal on the grounds of *forum non conveniens* should be denied.

## CONCLUSION

The forum selection clause contained in the Policy is unenforceable as it is against the clear and unambiguous public policy of Louisiana. Moreover, an analysis of the private and public

---

[51] *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1164 (5th Cir. 1987) (citations omitted).

[52] *Id.*

[53] *See, e.g., Arabian Teading & Chem. Indus. Co. Ltd. v. The B.F. Goodrich Co.*, 823 F.2d 60, 62-63 (4th Cir. 1987); *Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs. Int'l Inc.*, 331 F. Supp. 2d 290, 293-301 (D.N.J. 2004); *Chadwick v. Arabian Am. Oil Co.*, 656 F. Supp. 857, 860-62 (D. Del. 1987); *see also Levine v. Arabian Am. Oil Co.*, 1985 U.S. Dist. LEXIS 13386, at *15-17 (S.D.N.Y. Nov. 27, 1985) (citing federal cases applying Saudi law).

[54] *Torres de Maquera v. Yacu Runa Naviera S.A.*, 107 F. Supp. 2d 770, 780 (S.D. Tex. 2000).

interest factors under the *forum non conveniens* doctrine weigh against dismissal. Wherefore, for the reasons noted herein, Plaintiffs respectfully request that this Court deny Walaa's Motion to Dismiss for *Forum Non Conveniens*.

Respectfully submitted,

*/s/ L. Etienne Balart*
EDWARD D. WEGMANN (La. #13315)
L. ETIENNE BALART (La. #24951), T.A.
LAUREN C. MASTIO (La. #33077)
TAYLOR K. WIMBERLY (La. #38942)
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: 504-582-8584
Facsimile: 504-589-8584
Email: ebalart@joneswalker.com
dwegmann@joneswalker.com
lmastio@joneswalker.com
twimberly@joneswalker.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been forwarded to all counsel of record by hand, electronic filing, facsimile, email, and/or depositing a copy of same in the U. S. mail, postage prepaid and properly addressed this 24th day of August, 2021.

*/s/ L. Etienne Balart*