UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DYNAMIC INDUSTRIES, INC., DYNAMIC INDUSTRIES INTERNATIONAL, LLC and DYNAMIC INDUSTRIES SAUDI ARABIA, LTD., | * * * * | NO. 2:21-CV-748 |
| Plaintiffs, | * | |
| VERSUS | * * | JUDGE IVAN L.R. LEMELLE |
| METLIFE - AMERICAN INTERNATIONAL GROUP – ARAB NATIONAL BANK COOPERATIVE INSURANCE COMPANY; WALAA COOPERATIVE INSURANCE CO.; AMERICAN LIFE INSURANCE COMPANY; AIG MEA INVESTMENTS AND SERVICES COMPANY and MARSH & MCLENNAN COMPANIES INC. Defendants. | * * * * * * * * * * | MAG. JANIS VAN MEERVELD |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## REPLY IN FURTHER SUPPORT OF *FORUM NON CONVENIENS* DISMISSAL

Walaa Cooperative Insurance Co. ("Walaa"), successor in interest to improperly named/non-existent entity Metlife AIG-ANB, submits this brief in further support of its Motion to Dismiss for *forum non conveniens* ("FNC Motion") (ECF No. 45) to respond to legal and factual inaccuracies in Plaintiffs' Opposition (ECF No.67).[1] Plaintiffs' rely **solely** on La. Rev. Stat. §22:868 to avoid the Policy's mandatory Saudi forum/jurisdiction clause, but that statute **does not apply**. Even if it did, the FNC public/private interest factors require dismissal in favor of a Saudi forum, notwithstanding Plaintiffs' factually wrong efforts – devoid of Saudi-law evidence responsive to Walaa's - to distract the Court from the total lack of any Louisiana nexus.

I. **Louisiana Law does not Apply**

   A. **Entrenched Federal Maritime Law Nullifies any Effect of Louisiana Public Policy**

Plaintiffs admit that "federal law governs the enforceability of forum selection clauses" (ECF No. 67, p. 3), but then suggest that this federal court must "interpre[t] state law" to determine the

---
[1] Walaa incorporates by reference its simultaneously filed Reply to Plaintiffs' Opposition (ECF No. 70) to Walaa's Rule 12 Motion (ECF No. 44).

1

enforceability of the Saudi Arabian forum/jurisdictional selection clause in the Policy. The argument is both internally inconsistent and ignores uniform holdings of this Court, the Louisiana Supreme Court, and the Fifth Circuit that federal maritime law regarding forum/jurisdictional selection trumps Louisiana law.[2] The Policy providing CGL coverage for maritime risks is a marine insurance policy under Fifth Circuit precedent.[3] Under well-settled law, **Louisiana *state* public policy is irrelevant and inapplicable** in this *federal* dispute over a maritime contract.[4]

### B. Louisiana Revised Statute §22:868 Does Not Apply

Even if Louisiana public policy were material (it is not), Plaintiffs rely exclusively on **inapplicable** provisions of La. Rev. Stat. §22:868 in attempting to meet their "high burden of persuasion"[5] in challenging the Policy's mandatory Saudi Arabian forum selection clause, exactly as they did in their Complaint (ECF No. 35, ¶¶53-56). Because the statute *does not apply*, the Policy clause by definition cannot "contravene a strong public policy of" Louisiana.[6]

#### 1. The Policy was not Issued/Delivered in Louisiana

Plaintiffs initially argue the Policy was "delivered or issued for delivery" in Louisiana on the premise that Marsh KSA was acting *as Walaa/Metlife AIG-ANB's agent* – not as Plaintiffs' authorized broker – during Policy negotiation and placement (ECF No. 67, pp. 6-8). Plaintiffs rely on their Rule 12 Opposition argument that the "Broker Authorization Letter" (BLA) issued by DISA only authorized Marsh KSA to "communicate" regarding the Policy, but not to accept

---

[2] *Falk v. Marsh Inc.,* 2012 WL 13001817, at *5 (E.D. La. July 9, 2012) (Lemelle, J.); *Lejano v. Bandak*, 705 So. 2d 158, 166 (La. 1997); *Calix-Chacon v. Glob. Int'l Marine, Inc.*, 493 F.3d 507, 510 (5th Cir. 2007).
[3] *Taylor v. Lloyd's Underwriters of London*, 972 F.2d 666, 668 (5th Cir. 1992) ("Because the CGL policy 'insures against certain maritime risks and losses,' it provides maritime insurance within the meaning of *Wilburn Boat*").
[4] *Barnett v. DynCorp Int'l, L.L.C.,* 831 F.3d 296, 301 (5th Cir. 2016) (FNC dismissal based on Kuwaiti forum clause).
[5] *Id.* at 309.
[6] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016). Plaintiffs discuss the recent (effective August 1, 2020) amendment to §22:868 in response to the *Al Copeland* and *Creekstone/Juban* decisions of the Fifth Circuit and Louisiana Supreme Court (respectively) (ECF No. 67, pp. 4-5). But this amendment (and the decisions prompting it) are irrelevant **because the statute is inapplicable regardless**. Further, Plaintiffs' discussion of Louisiana cases addressing the anti-arbitration provisions of §22:868 is irrelevant - and wrong - because the Policy's forum/ jurisdictional selection clause is not an arbitration clause; and the New York Convention would preempt any effect of the Louisiana statute. *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 432 (5th Cir. 2019).

delivery.  **This is flatly wrong**: the BLA expressly and exclusively appointed Marsh KSA as DISA's insurance representative and broker and authorized Marsh KSA to be "furnish[ed]" with all "insurance contracts…policies, certificates, or other data MARSH [KSA] may request" from Walaa/Metlife AIG-ANB – all of which Marsh KSA did on behalf of DISA and DII, as detailed with record citations in Walaa's Reply to Plaintiffs' Rule 12 Opposition (*see* pp. 3-7).  Plaintiffs' own documents, and Saudi laws regulating Marsh KSA/Walaa (Ex. 2, ¶¶4-16), show Marsh KSA acted *and could* **solely** act as *Plaintiffs'* **broker**, expressly authorized to accept Policy issuance/ delivery for Plaintiffs via the BLA and their dealings *in Saudi Arabia* with Marsh KSA.

Documents submitted in Plaintiffs' Declaration are further best evidence that Marsh KSA was Plaintiffs' authorized broker, starting with **Marsh KSA's** email forwarding the Policy to Plaintiffs:

> Please find attached the [Walaa] insurance company issued policy.
>
> The policy seems to be in order based on the policy schedule checked by us.  Kindly let us know if you find any discrepancy or need any changes to be done.
>
> Also advise at which address to send the original policy document.

(ECF No. 70-1, Ex. A-5, p. 1).  This responded to Plaintiffs' requests for Marsh KSA to "**please obtain the policy number and policy wording [they] have been requesting from [Marsh KSA]/Marsh for many weeks**" (emphasis original) and "[w]hen will you be done with your review [of the Policy] so you can send me the policy?"; and followed an earlier Marsh KSA email confirming **it** had "**received** the direct policy with full wordings [and was] [r]eviewing the same before sending" (*id.* at pp. 2-3, 8).  Marsh KSA thus accepted, reviewed, and delivered the Policy to Plaintiffs for approval *after* Marsh KSA initially received issuance/delivery*, all* in Saudi Arabia at Plaintiffs' specific direction. Further, Plaintiffs via Marsh KSA **later requested** *renewal of the same Policy*, *including* the Saudi forum/jurisdictional selection clause (ECF No. 45-4, p. 99/208).

Plaintiffs' follow-on contention that the Policy was issued/delivered for issuance in Louisiana (ECF No. 67, pp. 7-8) is likewise belied by the objective evidence and Plaintiffs' admissions.

***Plaintiffs' own documents*** expressly state the Policy was issued and delivered **in Saudi Arabia**: a January 17, 2017 email from Marsh KSA to the Marsh Entities (then forwarded to Plaintiffs), expressly states that "[t]he local policy [*i.e.* the Policy] in Saudi Arabia **will be issued by company [Walaa/Metlife AIG-ANB] <u>in Saudi Arabia</u>**" (ECF No. 70-1, Ex. A-2, p. 5). Further, Plaintiffs admission that the Policy "was electronically mailed to Plaintiffs by Marsh" (ECF No. 70-1, ¶35) - specifically *Marsh KSA,* as indicated in the email exhibits attached to Plaintiffs' Declaration (*see* ECF No. 70-1, Ex. A-5, p.1 *et seq.*) - necessarily admits the Policy was <u>**first**</u> issued/delivered by Walaa/Metlife AIG-ANB **in Saudi Arabia** to Marsh KSA as Plaintiffs' authorized and exclusively appointed broker of record with authority to receive the Policy *as required by Saudi law/ regulations* (*see* ECF No. 45-4, ¶38; Ex. 2, ¶5). The self-serving contention that "Plaintiffs have no record of the Policy ever having been delivered by anyone to any Dynamic entity, including DISA, in Saudi Arabia" (ECF No. 70-1, ¶36; *see also* ECF No. 67, p. 8) **is incorrect**, ignoring the incontrovertible **fact** that the Policy was issued/delivered by email and hand delivery (ECF 45-4, ¶¶57-61) to Marsh KSA *in Saudi Arabia*, as DISA's (via the BLA) and DII's (at its Texas address) expressly authorized broker for receipt of the Policy. Any New-Orleans-based activities noted in Plaintiffs' Opposition (ECF No. 67, pp. 7-8) did not involve Walaa/Metlife AIG-ANB (*see* Walaa Declaration, ECF No. 45-4, ¶¶35-38, 59-66) or any transmission of the Policy by it; and any New-Orleans-related correspondence (ECF No. 70-1, Ex. A-1 to A-16) was neither sent by nor addressed/copied to Walaa/Metlife AIG-ANB. All such exchanges were **exclusively** among the Marsh Entities, Plaintiffs, and Marsh KSA as **Plaintiffs' authorized** Saudi Arabian broker.[7]

With Plaintiffs' fallacies dispelled, their attempts (ECF No. 67, pp. 6-8) to distinguish the Fifth Circuit's controlling *McDermott* decision fail (as Walaa has explained, ECF No. 45-1, pp. 11-14).

---

[7] Plaintiffs cite inapposite cases (under the *inapplicable* Louisiana Direct Action statute) to suggest "delivery orchestrated to avoid…Louisiana law" is invalid (ECF No. 67, p. 7). But there is no allegation (or possibility) of such "orchestration" here, where the process was **specifically to *comply* with governing *Saudi* law**.

## 2. The Policy Qualifies as "Ocean Marine" and/or "Foreign Trade" Insurance

Plaintiffs argue the Policy is not "ocean marine" insurance because it provides CGL coverage. **This is wrong**: the Fifth Circuit has unequivocally held a "CGL policy 'insur[ing] against certain maritime risks and losses' … provides maritime insurance."[8] Further, the Louisiana insurance code itself broadly defines "ocean marine insurance" so as to encompass the Policy:

> "Ocean marine insurance" means marine insurance as defined in R.S. [§]22:47(13) [and] **any other form of insurance, regardless of the name, label, or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks**, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity. La. Rev. Stat. §22:46(11.1)

> ["Marine insurance" includes] (b) Insurance against loss or damage to persons or property in connection with or appertaining to marine, inland marine, transit, or transportation insurance, including liability for loss of or damage to [*sic*] either arising out of or in connection with the construction, repair, operation, maintenance, or use of the subject matter of such insurance…La. Rev. Stat. §22:47(13).

Plaintiffs *invoke* maritime jurisdiction (ECF No. 35, ¶11) and seek marine CGL coverage for an Incident involving *vessels* engaged in *subsea* demolition operations (*see id*. ¶¶23-35). The Policy is specifically endorsed (ECF No. 1-2, p. 34/37) to cover vessel operations (if there is P&I coverage for such vessels, and only excess of $25 million). Any coverage under the Policy would be "ocean marine insurance" exempt from §22:868 under these Louisiana definitions and Fifth Circuit law.

Tellingly, Plaintiffs' brief <u>omits entirely</u> the initial clause of §22:46's definition of "ocean marine insurance," which expressly includes "any other form of insurance, ***regardless of the name, label, or marketing designation of the insurance policy***."[9] Plaintiffs paste the Policy's "name, label [and] marketing designation" to suggest Walaa has "blatantly ignore[d]" that CGL insurance

---

[8] *Taylor v. Lloyd's Underwriters of London*, 972 F.2d 666, 668 (5th Cir. 1992). As Walaa has explained (ECF No. 45-1, pp. 6-9), the rule upholding enforcement of forum selection clauses is an entrenched, specific and controlling federal maritime rule requiring enforcement of the Policy's forum/jurisdictional selection clause under *Wilburn Boat*.
[9] Plaintiffs emphasize the term "traditional marine insurances" (ECF No. 67, p.8) in selectively quoting §22:46, presumably to suggest that CGL is not "hull and machinery, marine builder's risk, [or] marine protection and indemnity" insurance and should not be covered. This is legally incorrect. The term "such as" connotes a *merely* illustrative list, *State v. Muller*, 365 So. 2d 464, 465 (La. 1978); thus, the statute encompasses marine CGL insurance.

5

is "clearly not" "ocean marine insurance" (ECF No. 67, p. 9), but this *itself* "blatantly ignores" the statutory definition (and Fifth Circuit law) that *disregards* mere names or labels.

Plaintiffs next argue the Policy is not "foreign trade" insurance because it "does not provide insurance for the exchange of goods" (ECF No. 67, p. 9). As Walaa has stated, the Louisiana Insurance Code does not define the term "foreign trade insurance." However, Louisiana law does *preclude* Plaintiffs' proposed definition limiting "foreign trade" to the mere "exchange of goods" (ECF No. 67, p. 9). First, the Louisiana Revised Statutes elsewhere broadly define the term "trade" as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated…"[10] Under this inclusive definition, Plaintiffs' "distribution of… services" to Saudi Aramco *in Saudi Arabia* would constitute "trade" that is necessarily and objectively "foreign." Second, as the Louisiana First Circuit has held, Plaintiffs' operations (via DISA) in Saudi Arabia absolutely qualify as "foreign trade" as that term relates to the phrase "international trade" in the Louisiana Constitution: "These vessels [barges, tugboats, supply vessels] spend much of their time in international waters… [and [w]hen they discharge cargo, perform operations on foreign-flagged drilling rigs, and carry supplies and passengers into waters of foreign countries, they are engaged in 'international trade' [under La. Const. art. 7, sec. 21(C)(16)]."[11] Under this same common-sense, plain language definition, the Policy's coverage of Plaintiffs' Saudi operations is "foreign trade insurance" exempt from §22:868.

   **3. Plaintiffs Ignore the Plain Language of §22:868's "Subjects… Resident" Provision**

Plaintiffs dispute Walaa's argument that the *conjunctive* requirements of §22:868 ("[1] deliver[y] or issu[ance] for delivery [of the Policy] in [Louisiana] **and** [2] cover[age of] **subjects**

---

[10] La. Rev. Stat. §51:1402.
[11] *Moonmaid Marine, Inc. v. Larpenter*, 599 So. 2d 820, 824 (La. App. 1 Cir.) *writ denied,* 605 So. 2d 1120 (La. 1992).

located, resident, or to be performed in [Louisiana]") necessarily require **both** the *insured entity* **and** the *subject matter insured* to be "located, resident, or to be performed" in Louisiana. Plaintiff's argument ignores both and relies on the purported *purpose or policy* of the statute *at the expense of its actual words*: "All that matters is that a Louisiana resident is involved in the Policy, and … are the parties exposed to the risk here in New Orleans" (ECF No. 67, p. 11). This would rewrite the statute (as Walaa has argued, ECF No. 45-1, pp. 15-16) and render superfluous the entire second conjunctive component, effectively deleting it so that the statute would apply merely on issuance/delivery to a Louisiana insured. The caselaw Plaintiffs tout from "an authoritative legal icon" in fact *contradicts* their position: "[§22:868] incorporates a public policy determination [regarding] contract[s] issued in Louisiana **and** covering a Louisiana subject…"[12] This is consistent with the same public policy Plaintiffs claim to rely on: protection of Louisiana entities with respect to Louisiana risks[13] - *not* Louisiana entities and their foreign subsidiaries engaged in foreign projects with foreign parties utilizing foreign insurers, a principle the Louisiana Department of Insurance ("LDI") *itself* acknowledged in admitting non-applicability of the statute in *McDermott*.[14] Plaintiffs themselves - not Walaa – have "impermissibly request[ed] this Court

---

[12] *Lawrence v. Continental Ins. Co.*, 199 So. 2d 298 (La. App. 3 Cir. 1967) (Tate, J.).
[13] *See id*. (uninsured motorist policy issued to Louisiana insured; out-of-state accident causing losses in Louisiana).
[14] The LDI instituted separate/related declaratory judgment litigation in *McDermott*. However, as noted and quoted in Underwriters' appellate brief in *McDermott*, the LDI voluntarily dismissed its suit under a **stipulation** that §22:868 (via its predecessor §22:629) **did not apply** because (*inter alia*) there was no "subject" insured in Louisiana:

> Even if [§]22:629 were otherwise applicable, the McDermott Policy does not satisfy its factual requirements inasmuch as the McDermott Policy does not cover subjects "resident or to be performed in." The subject covered by the McDermott Policy at issue in the McDermott Litigation is the property insured -- the allegedly damaged heat exchangers. Pursuant to the May 17, 1991, Joint Stipulation in the McDermott Litigation, the heat exchangers were not delivered, installed, tested, erected, engineered or manufactured in Louisiana. The heat exchangers were sold by McDermott's corporate subsidiary, the Babcock & Wilcox Company (a corporation organized under the laws of Delaware with its principal place of business in Ohio), to the Baltimore Gas and Electric Company ("BG&E") in Maryland. The heat exchangers were installed by B&W at BG&E's power plant in Maryland, and the alleged loss occurred there.

Brief of Lloyd's Underwriters of London, 1996 WL 33425589 (5th Cir., Nov. 4, 1996). The LDI stipulation is filed in the CM/ECF record of Case No. 92-1904, ECF No. 29 (E.D. La, Oct. 13 ,1993), but is not electronically available (hence the quotation from the Westlaw version of the appellate brief). The Fifth Circuit expressly declined to address this issue, as it disposed of the case on other dispositive grounds. *See McDermott*, 120 F.3d at 587 FN 10.

to simply ignore the plain language of the statute" (ECF No. 67, p. 10).[15]

### 4. §22:868(D) Also Precludes Application of the Statute to the Policy

Plaintiffs also incorrectly argue the Policy is subject to LDI approval under §22:861 (ECF No. 67, p. 11). The Policy is expressly subject **solely to SAMA regulatory approval in Saudi Arabia**, not LDI oversight (ECF No. 1-2, p. 4/37; ECF No. 45-4, ¶¶8-10, 20-21; Ex. 2, ¶5). More, the Policy provides "ocean marine"/"foreign trade insurance" that §22:851 categorically exempts from §22:861's form-approval provisions (*supra* §I.B.2).[16] Also, under (inapplicable) Louisiana law, Walaa would either be an "alien insurer" "formed under the laws of any country other than the United States," not authorized by or under jurisdiction of the LDI[17]; or an "eligible unauthorized insurer" (meeting regulatory requirements of its home Saudi Arabian jurisdiction and minimum capitalization requirements), and thus a "surplus lines insurer,"[18] which §22:446 expressly exempts from any LDI-approval requirement. Either way, LDI approval would not apply to the Policy.

Plaintiffs' further suggestion that §22:446's LDI-approval exemption only applies to "bespoke policies of [surplus lines] insurance" (ECF No. 67, p. 12) ignores the *unequivocal, unlimited,* and *complete* exemption granted to surplus lines casualty insurers under §22:446 without regard to whether a policy form is generic or bespoke. Plaintiffs' argument (again) seeks to rewrite the law.

## II. FNC Private/Public Interest Factors Favors a Saudi Arabian Forum

The Policy's mandatory Saudi Arabian forum/jurisdictional selection *is not invalidated* by any Louisiana law, and precludes a full private/public interest factor balancing analysis. But even absent the clause, the full FNC analysis still dictates dismissal in favor of a Saudi Arabian forum.

### A. Plaintiffs' Inherently Foreign Status Precludes Substantial Deference to this Forum

---

[15] Plaintiffs' Opposition *does not even address* the myriad other Louisiana Insurance Code provisions cited by Walaa in which the term "subject" means the *subject matter* insured, not the *insured entity itself*. ECF No. 45-1, pp. 15-16.
[16] La. Rev. Stat. §22:851 ("The applicable provisions of this Chapter shall apply to insurance other than ocean marine and foreign trade insurances"). §22:861's form approval requirement is part of the "Chapter" referred to in §22:851.
[17] *See* La. Rev. Stat. §22:46(1) (defining "alien insurer" & (3) (defining "authorized insurer").
[18] *Id*. at §22:46(7.1) and §22:46(17.1). *See also* ECF No. 45-4, ¶¶20-22.

8

Plaintiffs misstate the importance/weight of their forum choice, suggesting that "depriving the plaintiff of his chosen forum is an exceptional outcome" (ECF No. 67, p. 14). This ignores that Plaintiff DISA – the sole real party in interest whose alleged liability to Saudi Aramco for a Saudi Arabian Incident is the *sole possible basis* for Plaintiff DI's claim as guarantor – **is a foreign (Saudi) entity** in a multinational corporate operation. "[The generally] strong presumption in favor of the plaintiff's choice of forum…applies with less force when the plaintiff or real parties in interest are foreign."[19] The Fifth Circuit has rejected heightened deference to a multinational plaintiff's chosen forum: thus, "[g]iven that [Plaintiffs function as] international compan[ies] with facilities in the alternate [Saudi Arabian] forum, [it may be] reasonably assumed that that alternate forum would not be inconvenient for [Plaintiffs] [and] the [C]ourt [may] affor[d] the [P]laintiff[s'] forum 'somewhat lessened' deference."[20] The Fifth Circuit has reiterated this theme:

> Judicial concern for allowing [U.S.] citizens access to American courts has been tempered by the expansion and realities of international commerce. When a [U.S.] corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's preference of a [U.S.] forum…[P]arties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a [U.S.] forum when every reasonable consideration leads to the conclusion that the…the litigation should be elsewhere.[21]

Here, the fundamental underlying issue - DISA's potential fault/negligence (if any) in damaging Saudi Aramco's subsea cable, which is the *sole basis* for potential coverage to DI as guarantor - involves **entirely Saudi Arabian facts, property, actors, and evidence**. As international commercial actors who voluntarily procured insurance from a Saudi insurer for a Saudi project, Plaintiffs' "choice" of a Louisiana forum does not warrant substantial deference.

**B. Plaintiffs Offer No Basis to Refute <u>Presumptive</u> Adequacy/Availability of Saudi Forum**

---

[19] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).
[20] *Innovation First Int'l, Inc. v. Zuru, Inc*., 513 F. App'x 386, 392 (5th Cir. 2013).
[21] *DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 795 (5th Cir. 2007).

Plaintiffs suggest – **with no support or proof** – that the Saudi Arabia IDCs are an inadequate and unavailable forum (ECF No. 67, pp. 15-17). The argument fails at every turn.

First, "the adequacy of a foreign forum's substantive laws is presumed, absent an affirmative showing to the contrary"; thus, when a plaintiff "has made no showing that [the foreign forum's] laws are inadequate," and when the defendant has "provided support for [the] proposition that [foreign] law is adequate [in the form of a foreign-law expert declaration], [a court will] conclude[e] that [the foreign forum] is an available, adequate alternative forum."[22] Indeed, when a plaintiff "has not provided the Court with an expert's opinion on the issue…the Court will assume… that [the foreign forum] is…adequate."[23] Walaa has submitted a Rule 44.1 Declaration (ECF No. 45-5) and Supplemental Declaration (Exhibit 2) from Saudi Arabia-qualified lawyer Mohammed Ibrahim Aldowish confirming the availability and adequacy of the Saudi Arabian IDCs. **Plaintiffs have presented no countervailing evidence/authority**. More, multiple courts in the Fifth Circuit recognize the availability/adequacy of substantially similar quasi-judicial Saudi Arabian dispute resolution committees and specialized judicial courts.[24] The adequacy/availability of the Saudi IDCs must be legally and definitively presumed – and the record proves as much.

Plaintiffs further speculate that Saudi Arabia is inadequate/unavailable because the domestic Marsh Entities "who were intimately involved in the procurement and negotiation of th[e] Policy" are "likely not subject to suit or arbitration in Saudi Arabia" (ECF No. 67, p. 15). Plaintiffs identify nothing in Saudi law to substantiate this conjectural "likely" outcome. In fact, under Saudi law, the Marsh Entities ***would* likely be subject** to jurisdiction in any IDC proceeding (assuming any

---

[22] *Akerblom v. Ezra Holdings Ltd.,* 2012 WL 464917, at *4 (S.D. Tex. Feb. 13, 2012).
[23] *MCR Oil Tools, LLC v. Wireline Well Servs. Tunisia*, 2021 WL 1086995 (S.D. Tex. Mar. 22, 2021).
[24] *Forsythe v. Saudi Arabian Airlines Corp*., 885 F.2d 285, 290 (5th Cir. 1989) (Saudi Arabian "Labor and Settlement of Disputes Committee" as adequate alternative forum); *Jeha v. Arabian Am. Oil Co.,* 751 F. Supp. 122, 125–26 (S.D. Tex. 1990), *aff'd* 936 F.2d 569 (5th Cir. 1991) (Saudi Arabian "Legal Medical Commission" adequate alternative forum for medical malpractice claim); *Soroof Int'l Co. v. Transocean Inc*., 2010 WL 11583336, at *4 (S.D. Tex. Sept. 30, 2010) (Saudi "Board of Grievances," specialized administrative court, appropriate forum for employment dispute).

viable claim exists).[25] And from a U.S. law standpoint, Saudi Arabia would have specific personal jurisdiction over the Marsh Entities, if they "purposefully availed" themselves of the Saudi forum by engaging with their Saudi affiliate Marsh KSA to place insurance on Plaintiffs' behalf. Nor does Plaintiffs' position make sense. Based on the logic of their own unsupported, **legally wrong** "guess" that the Marsh Entities would not be subject to Saudi jurisdiction, Marsh KSA (Plaintiffs' Saudi broker, a necessary party who was "intricately involved in the procurement and negotiation of th[e] Policy" (ECF No. 67, p. 15)), would *also* not be subject to *this Court's* jurisdiction. Indeed, Plaintiffs have conspicuously not sued Marsh KSA, presumably due to jurisdictional concerns.

Regardless, Plaintiffs' claims for breach of duty/negligence against the Marsh Entities are premature before a determination of coverage under the Policy. If there **is** coverage, there is no claim against the Marsh Entities.[26] Thus, the Marsh Entities are not necessary parties to any coverage dispute, and could be pursued separately - in an appropriate jurisdiction - after coverage is determined in the contractually mandated, and more convenient Saudi Arabian jurisdiction.

Plaintiffs also invalidly suggest Saudi Arabia is not available/adequate because they intend to sue reinsurers whom Plaintiffs *guess* are "likely" located in London (ECF No. 67, p. 16). Putting aside that Plaintiffs appear to have no such cause of action,[27] their guess is refuted by their own documents showing **the reinsurers are in the Middle East** (Dubai, Bahrain), not London (ECF No. 70-1, Ex. A-2, p. 5). A Saudi Arabian forum – not this Court - would be more convenient if any of these Middle Eastern reinsurers were to somehow be legitimately targeted by Plaintiffs.

Plaintiffs also speculate – without *any* support from a Saudi Arabian legal practitioner - that

---

[25] *See* Ex. 2, ¶¶17-21.
[26] *See, e.g.*, *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co*., 2020 WL 6537230, at *4 (W.D. Tex. Nov. 5, 2020) (collecting cases) (insured's negligence claim against his insurance agency was not ripe for adjudication because it was contingent on unresolved question whether insured was entitled to coverage under policy).
[27] *See LaSalle Par. Sch. Bd. v. Allianz Glob. Risks U.S. Ins. Co*., 2008 WL 1859847, *6 (W.D. La. Apr. 24, 2008); ("The Louisiana Supreme Court has held that an insured generally may not sue its insurer's reinsurer directly…").

Saudi Arabia is unavailable/inadequate because any decision in a Saudi Arabian IDC proceeding (which they incorrectly describe as "arbitration"[28]) would be unenforceable (ECF No. 67, p. 16). **This is flatly wrong.** SAMA regulations **mandate** "SAMA shall request the license withdrawal of the Company or the Insurance and Reinsurance Services Provider…[for] **[f]ailure to pay a final judgment against it related to its insurance operation**."[29] The threat of de-licensing and essentially shutting down a recalcitrant entity's business is a powerful enforcement tool. Further, the Saudi Arabian "Enforcement Law" extends to IDC decisions. Thus, once final, IDC decisions are affixed with an enforcement seal and become an "execution deed" that in turn can be enforced against assets of the losing party (amongst other potential enforcement remedies even more expansive than in the U.S.).[30] And, ironically, Plaintiffs' baseless (and wrong) speculation as to enforceability of IDC decisions ignores that any judgment issued in these proceedings *would likely not be enforceable against Walaa in Saudi Arabia*. Specifically, a Saudi court would only enforce a judgment of this Court if various specific factors under the Saudi "Enforcement Law" were met, including *inter alia* (a) that this Court was competent to hear the case rather than a Saudi court, which is **not so here** based on the Saudi forum/jurisdictional selection clause and because this Court *lacks jurisdiction* as stated in Walaa's Rule 12 Motion; and (b) only if this Court's judgment were not inconsistent with Sharia law and would reciprocally honor a Saudi judgment.[31]

Plaintiffs next hypothesize (again with no Saudi legal support) that IDC proceedings in Saudi Arabia may not be sufficiently similar to those of this Court with respect to discovery, depositions,

---

[28] The IDCs conduct quasi-judicial proceedings, not arbitration. *See generally* ECF 45-4; Ex. 2. ¶¶34-42.

[29] *See* SAMA Regulations, Art. 76.1.k *available at* https://www.sama.gov.sa/en-US/Laws/InsuranceRulesAndRegulations/%D8%A7%D9%84%D9%84%D8%A7%D8%A6%D8%AD%D8%A9%20%D8%A7%D9%84%D8%AA%D9%86%D9%81%D9%8A%D8%B0%D9%8A%D8%A9%20%D9%84%D9%86%D8%B8%D8%A7%D9%85%20%D9%85%D8%B1%D8%A7%D9%82%D8%A8%D8%A9%20%D8%B4%D8%B1%D9%83%D8%A7%D8%AA%20%D8%A7%D9%84%D8%AA%D8%A3%D9%85%D9%8A%D9%86%20%D8%A7%D9%84%D8%AA%D8%B9%D8%A7%D9%88%D9%86%D9%8A.pdf. *See also* Ex. 2, ¶¶23-24.

[30] *See* Ex. 2, ¶¶25-32.

[31] *Id*. at ¶21.

etc. - ironically disparaging Walaa's Rule 44.1 declaration as *ipse dixit* despite their own total lack of any Saudi legal evidence (ECF No. 67, pp. 16-17). Of course, differences in pretrial discovery, trial practice and procedures are not relevant concern to the FNC adequacy/availability analysis.[32] Regardless, IDC proceedings **do allow** for documentary and testamentary evidence preparation/presentation: "All types of evidence may be used before the [IDCs], including electronic and computer data, telephone recordings, fax correspondence, emails or SMS messages"[33]; along with numerous other advantages in terms of oral advocacy, cost recovery, and consideration of foreign authorities.[34] Also, under general principles of Sharia Court procedure applicable in the IDCs,[35] discovery may be requested by the parties, or the IDCs *sua sponte*; and may be directed by IDC-appointed case experts tasked with fact-finding and claim assessment.[36]

### C. The Private & Public Interest Factors Favor a Saudi Arabian Forum

All Plaintiffs' arguments under the private interest factors (which are *irrelevant* given the Policy's enforceable forum selection clause) suggest that a coverage determination can be made based solely on the Policy and the Contract, without any need for Saudi Arabian evidence or witnesses regarding the Incident, and without any consideration for Saudi Arabian law/process (ECF No. 67, pp. 17-18). This is wrong. Fault for the Incident is a necessary prerequisite to a determination of coverage. As Walaa explains in its incorporated Reply to Plaintiffs' Rule 12 Opposition (p. 2), the Contract as quoted in Plaintiffs' own Complaint only renders DISA (and allegedly DI as parent guarantor) liable for property damage "due to an event resulting from **the**

---

[32] *See Adams v. Merck & Co. Inc.*, 353 F. App'x 960, 964 (5th Cir. 2009) ("[I]nstitutional conditions that go to the heart of policy differences between the [U.S. and] foreign fora [as to] appropriate mechanisms for resolving civil disputes [i.e. discovery/trial procedure]" are irrelevant to FNC analysis) (citing *Robinson v. TCI/US West Commc'ns.*, 117 F.3d 900, 902-03 (5th Cir.1997) (given "enormous scope" of discovery under American law, appellant was no doubt correct less discovery would be available under English law, but this did not make English forum inadequate)).
[33] *See* ECF No. 45-5, Ex. A, p. 8/23, Art. 7, Working Rules and Procedures of IDCs.
[34] Ex. 2, ¶42.
[35] ECF No. 45-5, Ex. A,. at p. 10/23, Art. 12.
[36] *See* Ex. 2, ¶¶34-42.

**negligence, willful misconduct, or fault of CONTRACTOR** [DISA] OR CONTRACTOR GROUP CONTRACTOR [i.e. DISA's subcontractors]" (ECF No. 35, ¶38). Thus, contrary to Plaintiffs' dismissive suggestion that coverage can be resolved on mere review of documents, this is absolutely not the case. As Walaa has explained (*see* ECF No. 45-1, pp. 22-25), resolution of fault for the Incident will involve witnesses/evidence from DISA's Saudi Arabian personnel; witnesses/evidence from Saudi Aramco, a foreign sovereign and not subject to jurisdiction/ subpoena power of this Court; and witnesses/evidence from DISA's foreign/Chinese subcontractors involved in the operations that led to the Incident. Moreover, resolution of this factual prerequisite of fault in the Incident **is subject to mandatory arbitration** in Saudi Arabia (and/or Dubai) under the DISA/Saudi Aramco Contract and DISA's Subcontract. There is also a related dispute as to whether DISA has primary additional insured coverage under its subcontractor's liability policy with Saudi Arabian insurer Alinma, which is not subject to jurisdiction in this Court and whose policy *mandates* Saudi Arabian law and jurisdiction. More, the Policy's relevant watercraft coverage "is subject to a minimum attachment of USD 25,000,000 any one occurrence" (ECF No. 1-2, PDF p. 34/37), and thus would only attach after exhaustion of $25 million in underlying coverage, presumably from Plaintiffs and/or their contractors' *other Saudi/foreign insurers*. And as to *all* these issues, *Saudi Arabian law* will govern – particularly under the Policy itself, which includes a mandatory, enforceable Saudi Arabian choice-of-law clause that applies *regardless* of the forum.[37] Thus, even if this Court retains the case, Saudi legal experts will be necessary to establish governing law, contrary to Plaintiffs' unsupported *ipse dixit* that "Louisiana law will apply" (ECF No. 67, p. 19). Last, it is possible Saudi Aramco's own fault (*i.e.* failure to properly identify/designate the location of the subsea cable) may have been a causal

---

[37] *St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans*, 418 F. App'x 305, 309 (5th Cir. 2011).

factor in the Incident. If so, the Contract - in a section Plaintiffs conspicuously *omitted* via ellipsis in their Complaint (ECF No. 35, ¶38) - would make **Saudi Aramco** liable to Plaintiffs,[38] but Saudi Aramco (a foreign sovereign) *cannot* be brought before this Court. Plaintiff's suggestion that Saudi Arabian facts don't matter is *directly contrary to Plaintiffs' own declaratory judgment requests* specifically seeking a declaration that "the Incident was caused… by the operations of [DISA's] subcontractor, COOEC" (Rec. Doc. 35, ¶60(e)), which necessarily requires resolution of the factual cause of the Incident; and a declaration that "[t]here is no 'other insurance' available to Plaintiffs" (Rec. Doc. 35, ¶60(h)), which would necessarily require construction of *inter alia* the Alinma policy, in violation of that policy's choice-of-jurisdiction/law provisions.

Further, the catch-all "practical problems" private interest factor requires consideration of the "enforceability of judgment" in the plaintiff's chosen forum;[39] but as explained above, any judgment from this Court would likely not be enforceable against Walaa in Saudi Arabia.

As for public interest factors, Plaintiffs again advance the false premise that this case is not centered in Saudi Arabia as to both the law and the requisite facts to which that law must be applied. Plaintiffs incorrectly suggest (as to the first "administrative difficulties" factor) that proceedings here would "undeniably proceed to trial quicker than in" the Saudi Arabian IDCs (ECF No. 67, p. 19) *without any* factual support; *without acknowledging* the sizeable burdens/delays inherent in the involvement of multiple foreign parties with no Louisiana nexus; and *with total disregard* for the statistical summary referenced in Walaa's Declaration demonstrating the efficiency of IDC proceedings.[40] Plaintiffs' remaining arguments fail, as they rely on the incorrect premise that Louisiana law will apply to the Policy.

---

[38] *See* Exhibit 1, Contract Sched. H, Art. 1.20/16.2.3 ("If the loss, damage or destruction of the FACILITIES or SAUDI ARAMCO Other Property is due to a cause other than as set out in Paragraphs 16.2.2 [i.e CONTRACTOR fault] **SAUDI ARAMCO shall compensate CONTRACTOR** for such WORK in accordance with Paragraph 10.").
[39] *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007).
[40] *See* ECF No. 45-5, ¶14. *See generally* https://www.idc.gov.sa/en-us/Pages/ReportsAndStatistics.aspx.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/S/ Kent A. Lambert*

**KENT A. LAMBERT (#22458)
CHRISTOPHER M. HANNAN (#31765)
KRISTEN L. HAYES (#36490)
KENNARD B. DAVIS (#38181)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone:	(504) 566-5200
Facsimile:	(504) 636-4000
Email:		klambert@bakerdonelson.com
Email:		channan@bakredonelson.com
Email:		klhayes@bakerdonelson.com
Email:		kbdavis@bakerdonelson.com

**COUNSEL FOR WALAA COOPERATIVE INSURANCE CO.**