UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DYNAMIC INDUSTRIES, INC., ET AL.                CIVIL ACTION

VERSUS                                          NO. 21-748

METLIFE – AMERICAN INTERNATIONAL                SECTION "B"(1)
GROUP – ARAB NATIONAL BANK COOPERATIVE
INSURANCE COMPANY, ET AL.

<u>ORDER AND REASONS</u>

Before the Court are defendant Walaa Cooperative
Insurance Company ("Walaa")'s motion to dismiss for *forum non
conveniens* (Rec. Docs. 45, 67, 81) and Walaa's motion to dismiss
pursuant to Rule 12(b)(1) and (2) (Rec. Docs. 44, 70, 80).

For the reasons discussed below,

**IT IS ORDERED** that defendant Walaa Cooperative Insurance
Company's motion to dismiss for *forum non conveniens* (Rec. Doc.
45) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Walaa's motion to dismiss
pursuant to Rule 12(b)(1) and (2) (Rec. Doc. 44) is **DISMISSED AS
MOOT.**

I.    **FACTS AND PROCEDURAL HISTORY**

On June 10, 2015, Dynamic Industries Saudi Arabia, Ltd. (DISA)
entered into a contract with Saudi Arabian Oil Company (SAUDI
ARAMCO) to replace five pipelines located in the Berri field in
the Kingdom of Saudi Arabia. Rec. Doc. 35 at 4. DISA is a Saudi
Arabian limited liability company headquartered in Al-Khobar

1

Kingdom of Saudi Arabia. *Id.* at 2. This contract required DISA to obtain "normal and customary general liability insurance" for the pipeline project, including insurance for personal injury or property damage. *Id.* at 8-9. Dynamic Industries, Inc. ("Dynamic"), DISA's parent company, guaranteed DISA's performance of the contract and assumed direct liability for DISA's obligations through a Parent Company Performance Guarantee. *Id.* at 4. Dynamic is a corporation organized under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana. *Id.* at 1. Dynamic Industries International, LLC ("Dynamic International") is Dynamic's parent company and is a limited liability company with its principal place of business in New Orleans, Louisiana. *Id.* at 2; *see also* Rec. Doc. 70 at 3.

To obtain insurance for the Saudi Arabia project, plaintiffs contacted Marsh USA, Inc.'s New Orleans office. Rec. Doc. 22-3 at 2; Rec. Doc. 84-1 at 2. Marsh USA, Inc. ("Marsh USA") is a Delaware corporation with its principal place of business in New York that is authorized to do business in Louisiana, but not Saudi Arabia. Rec. Doc. 79-1 at 3. Plaintiffs paid Marsh USA $25,000 for "casualty consulting." Rec. Doc. 70-1 at 18-21, 23-24. For assistance in procuring plaintiffs' required insurance, Marsh USA contacted Marsh Saudi Arabia Insurance & Reinsurance Brokers Saudi Arabia Riyadh ("Marsh KSA"). Rec. Doc. 84-1 at 2; Rec. Doc. 22-3 at 2. Marsh KSA is a Saudi Arabian corporation headquartered in

Riyadh, Saudi Arabia and licensed by SAMA to broker insurance policies that provide coverage for risks in Saudi Arabia. Rec. Doc. 22-3 at 2.

On January 26, 2017, a representative from Marsh KSA informed the EVP and Chief Financial Officer of Dynamic International that "100% cover" was placed with Metlife-American International Group-Arab National Bank Cooperative Insurance Company ("MAA")[1] for an inception date of January 12, 2017. Rec. Doc. 70-1 at 3. On or about February 2, 2017, MAA provided plaintiffs with a Certificate of Insurance identifying the name and address of the insured as "Dynamic Industries International LLC, 10777 Westheimer Rd Suite 975 USA." *Id.* at 15. Dynamic International, Marsh USA, and Marsh KSA exchanged numerous emails prior to this certificate's issuance. *Id.* at 8-14. On September 7, 2017, DISA paid Marsh KSA $476,531.00 for the premium required for MAA's general liability insurance policy. *Id.* at 26-27.

To fulfill its contractual obligations with SAUDI ARAMCO, DISA utilized subcontractors, including Offshore Oil Engineering Co., Ltd. (COOEC). Rec. Doc. 35 at 5. On June 25, 2019, a submarine power cable owned by SAUDI ARAMCO was damaged while COOEC personnel performed demolition and recovery operations in Berri Field. *Id*.

---

[1] On March 1, 2020, MAA merged with Walaa Corporation (Walaa). Rec. Doc. 80 at 8. At that time, "all assets/liabilities of [MAA] passed to Walaa in the merger." *Id.* Walaa is, thus, the entity responsible for plaintiffs' insurance policy. *Id.; see also* Rec. Doc. 63.

SAUDI ARAMCO reported this damage to DISA on September 7, 2019. *Id.* at 6.

Soon after DISA learned of the damage to SAUDI ARAMCO's power cable, the general counsel for Dynamic International, Mark Mahfouz, contacted Marsh KSA to notify them of the cable incident and to request a copy of plaintiffs' insurance policy with MAA. Rec. Doc. 70-1 at 82, 90-91. A Marsh USA representative also contacted Marsh KSA repeatedly to request a copy of Dynamic International's insurance policy with MAA. *Id.* at 85, 89, 91. On November 5, 2019, Marsh KSA informed Dynamic International that MAA would not issue the policy "citing non-submission of regulatory documents." *Id.* at 94. Before MAA would issue a policy, plaintiffs had to now submit a Broker's Letter Authorization on DISA letterhead and a Proposal Form. *Id.* Marsh KSA apologized to Dynamic International and Marsh USA's representative for requesting "these two documents at this stage" as the documents "should have been obtained at the initial stage." *Id.*

DISA signed the Broker's Letter of Authorization in November 2019, despite the letter being back dated to January 1, 2017. *Id.* at 29, 136. This authorization "exclusively appointed" Marsh KSA to act as DISA's "insurance representative and/or broker of record and to communicate on [DISA's] behalf with any insurance company." *Id.* at 136. The letter also authorized MAA "to furnish [Marsh KSA] with all information [Marsh KSA] may request from [MAA] as it

4

pertains to our insurance contracts, rates, . . . policies, certificates, or other data [Marsh KSA] may request." *Id.* In November 2019, plaintiffs also signed the required Proposal Form and backdated it to before January 12, 2017, the date when the policy period was said to begin. *Id.* at 149-150. After plaintiffs submitted the requested Broker's Letter of Authorization and Proposal Form, on November 17, 2019, MAA issued a comprehensive general liability insurance policy to Marsh KSA covering DISA's liability from a back dated period of January 12, 2017 to January 11, 2021. Rec. Doc. 1-2 at 2-3; *see also* Rec. Doc. 45-4 at 49. The policy provides coverage for plaintiffs as well as for "Other Assureds," including DISA's subcontractors for the pipeline project. Rec. Doc. 1-2 at 4.

On March 24, 2020, SAUDI ARAMCO notified DISA that COOEC's demolition operations indeed damaged its cable. Rec. Doc. 35 at 6. This notification came after SAUDI ARAMCO conducted a formal investigation and reviewed contemporaneous video evidence. *Id.* The estimate for repairing the damages is eight million dollars. *Id.* at 11. DISA immediately sent COOEC a letter dated March 26, 2020 requesting that COOEC place its insurance carriers on notice of the damage. *Id.* at 6. On March 31, 2020, COOEC denied all responsibility for damages to the subsea cable. Rec. Doc. 45-4 at 109. Shortly thereafter on April 7, 2020, SAUDI ARAMCO reiterated its request for DISA to submit an action plan for temporary

solution and permanent replacement of its damaged cable. Rec. Doc. 35 at 6. Consequently, plaintiffs demanded on April 14, 2020 that COOEC immediately submit an action plan for replacing the damaged cable and place its underwriters on notice. *Id.* at 7. COOEC's insurers denied any coverage for the damaged cable. *Id.*

As the cable damage took place in the coverage territory and during the policy period of plaintiffs' insurance policy, plaintiffs sought coverage from MAA, now known as Walaa,[2] and formally submitted a claim for the SAUDI ARAMCO cable damage on or around July 1, 2020. Rec. Doc. 70-1 at 162-63; *see also* Rec. Doc. 35 at 10. Walaa denied coverage on September 28, 2020 stating that they were "not in a position to comment on the factual liability" of DISA toward SAUDI ARAMCO and that coverage is provided "on an excess basis while the primary cover shall be with the Insurers issuing the liability policy arranged by COOEC." *Id.* at 163. After Walaa denied plaintiffs' claim, Marsh USA and Marsh KSA frequently communicated about persuading Walaa to change its position regarding coverage. *Id.* at 169-178. Marsh USA, Marsh KSA, and plaintiffs continued to request that Walaa reconsider coverage until plaintiffs sent Walaa a final demand letter for coverage on February 12, 2021. *Id.* at 179-195, 207.

---

[2] *See supra* note 1.

Walaa still refused to provide DISA with coverage for SAUDI ARAMCO's cable damage, and thus, on April 13, 2021, plaintiffs filed a complaint with this Court against Walaa, Marsh USA, and Marsh & McClennan Companies, Inc. ("MMC"), Marsh USA's parent company.[3] Rec. Doc. 1; *see also* Rec. Doc. 22-1 at 7. On July 6, 2021, plaintiffs filed their first amended complaint alleging that Walaa is liable for losses attributable to SAUDI ARAMCO's cable damage. Rec. Doc. 3 at 12-13. Alternatively, if plaintiffs are not entitled to coverage under the policy, then plaintiffs allege MMC and Marsh USA are liable for their failure to procure coverage that includes liability arising from the cable damage. *Id.* at 13. MMC filed a motion to dismiss on June 10, 2021 for failure to state a claim and for lack of subject matter jurisdiction. Rec. Doc. 22. It then supplemented that motion on August 6, 2021 claiming the Court also lacked personal jurisdiction over MMC.[4] Rec. Doc. 56. On August 2, 2021, Walaa filed a motion to dismiss for lack of subject matter and personal jurisdiction and a motion to dismiss for *forum non conveniens*. Rec. Docs. 44, 45. Marsh USA filed a

---

[3] Plaintiffs initially named American Life Insurance Company ("ALICO") and AIG MEA Investments and Services Company ("AIG") as additional defendants, but voluntarily dismissed these two defendants on August 23, 2021. Rec. Doc. 64. ALICO and AIG's motions to dismiss were dismissed as moot on November 12, 2021. Rec. Doc. 98. Plaintiffs initially also sued MAA, but MAA no longer exists as it merged with Walaa on March 1, 2020. *See supra* note 1.

[4] On December 16, 2021, the Court granted MMC's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6).

motion to dismiss for failure to state a claim and lack of subject matter jurisdiction on September 21, 2021. Rec. Doc. 79.[5]

## II.  LAW AND ANALYSIS

The Court need not establish personal or subject matter jurisdiction before dismissing a case for *forum non conveniens*. Pursuant to Supreme Court and Fifth Circuit authority, the Court has discretion to determine whether this matter should be dismissed for *forum non conveniens* prior to jurisdictional considerations. *See Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) ("[F]*orum non conveniens* may justify dismissal of an action though jurisdictional issues remain unresolved."); *see also Mitchell L. Firm, L.P. v. Bessie Jeanne Worthy Revocable Tr.*, 8 F.4th 417, 422 (5th Cir. 2021); *Ibarra v. Orica U.S.A. Inc.*, 493 F. App'x 489, 492-93 (5th Cir. 2012).[6]

### A.  *Forum Non Conveniens* Standard

The doctrine of *forum non conveniens* rests upon a court's inherent power "to prevent its process from becoming an instrument of abuse or injustice." *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1153-54 (5th Cir. 1987), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 490 U.S.

---

[5] On December 16, 2021, the Court granted Marsh USA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

[6] *See also Sinochem*, 549 U.S. at 436 ("[W]here subject matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

1032 (1989). Through this power, federal trial courts may decline to exercise its jurisdiction where it appears that the convenience of the parties and the court, as well as the interests of justice, indicate the action should be tried in another forum. *Id. at 1154 (citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250 (1981)). To obtain dismissal for *forum non conveniens*, the defendant must prove: (1) "the existence of an available and adequate alternative forum" and (2) "that the balance of relevant private and public interest factors favor dismissal." *Moreno v. LG Elec., USA Inc.*, 800 F.3d 692, 696 (5th Cir. 2015).

For private factors, courts weigh the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, need to view premises at issue, the enforceability of judgment if one is obtained, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded on other grounds by statute*, 28 U.S.C. § 1404(a), *as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994). Courts also analyze public interest factors, including the administrative difficulties flowing from court congestion, the local interest in having localized controversies resolved at home, the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action, the

avoidance of unnecessary problems in conflicts of law or in application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007).

The appropriate way to enforce a forum selection clause pointing to a foreign forum is through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co., Inc., v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Ordinarily, district courts weigh the public interest and private interest factors, as stated above. *Id.* at 62-63. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* at 63. In those instances, a valid forum selection clause "should be given controlling weight in all but the most exceptional cases." *Id.* Additionally, the courts "should not consider arguments about the parties' private interests," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. To apply this modified *forum non conveniens* analysis, however, the courts must confirm that the forum selection clause is indeed valid. *See id.* at 62 n.5, 63-64.

In the Fifth Circuit, federal law governs the enforceability of forum selection clauses. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016). A forum selection clause is presumed valid unless the party attacking the clause can prove the clause is unreasonable. *Id.* Courts find a forum selection clause

unreasonable when: (1) the forum selection clause was a product of fraud or overreaching; (2) the plaintiff will be "deprived of his day in court" due to the grave inconvenience or unfairness of the agreed upon forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement would contravene a strong public policy of the forum state. *Id.*

## B. Whether the Policy's Forum Selection Clause Applies

DISA's comprehensive general liability policy with Walaa names Saudi Arabian choice of law and jurisdiction in three different places in the agreement. Rec. Doc. 1-2 at 6, 27, 33. First, under a category titled "Choice of Law and Jurisdiction," the policy states "Saudi Arabia." *Id.* at 6. A subsequent heading entitled "Arbitration and Governing Law" states:

> If any difference shall arise as to the amount to be paid under this Policy (liability being otherwise admitted) which cannot be resolved by agreement between the insurer and the policyholder . . . such dispute shall be referred to arbitration in the Kingdom of Saudi Arabia. This Policy is governed by the laws of the Kingdom of Saudi Arabia. The policy is ultimately subject to the jurisdiction of Saudi Arabian Committees for Resolution of Insurance Disputes and Violations.

*Id.* at 27. Lastly the glossary section defines "jurisdiction and applicable laws" as "[a]ny dispute arising out of this policy shall be subject and governed by applicable laws and regulations of the Kingdom of Saudi Arabia, and the Insurance disputes committees . . . shall be the only competent bodies to deal with such disputes." *Id.* at 33. Walaa and plaintiffs do not dispute

11

that plaintiffs' insurance policy contains these forum selection clauses.[7] Rec. Doc. 35 at 11; Rec. Doc. 45 at 7. Plaintiffs also concede that the forum selection clause is not the product of fraud or overreaching, does not deprive plaintiffs of their day in court, and does not deny the plaintiff a remedy. *See* Rec. Doc. 67 at 3-8. But plaintiffs do argue the clauses contravene a strong public policy of Louisiana, as they allegedly violate Louisiana Revised Statute Section 22:868(A). *Id.* at 3-4.

The Fifth Circuit has not yet definitively answered whether Section 22:868(A) could invalidate a non-arbitration forum selection clause in an insurance policy. Section 22:868(A) states:

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, . . . shall contain any condition, stipulation, or agreement either: (1) Requiring it to be construed according to the laws of any other state or country . . . or (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

LA. STAT. ANN. § 22:868(A) (2021). Plaintiffs claim that this Louisiana statute prohibits insurance policies from requiring a Louisiana insured to litigate in a foreign jurisdiction, and consequently, the forum selection clause in their insurance contract violates Louisiana public policy. Rec. Doc. 67 at 6. The Fifth Circuit addressed this issue directly in *Al Copeland Investments, LLC v. First Specialty Insurance Corporation*, 884

---

[7] The Court uses the term "forum selection clause" generally, but at issue is jurisdiction, not venue.

F.3d 540 (5th Cir. 2018). There, the Court held that Section 22:868(A) "does not evince a public policy against forum-selection clauses in insurance contracts." *Id.* at 543. In reaching this conclusion, the Court relied heavily on the text of the statute. *Id.* at 543-44. In 2018, Section 22:868(A) only stated that an insurance policy could not deprive the courts of jurisdiction, but said nothing about venue. LA. STAT. ANN. § 22:868(A) (2018); *see also Al Copeland*, 884 F.3d at 543. Thus, the Court reasoned that Section 22:868(A) does not indicate any policy against forum-selection clauses because it never even precludes venue selection in insurance contracts. *Al Copeland*, 884 F.3d at 543-44. However, the Court did not address whether an insurance contract clause designating a foreign *jurisdiction* contravenes Louisiana public policy. *See id.* at 543-45. After the Fifth Circuit's decision in *Al Copeland*, the 2020 Louisiana Legislature amended Section 22:868(A) to include the word venue. LA. STAT. ANN. § 22:868 (2021); *see also Oak Haven Mgmt. LLC v. Starr Surplus Lines Ins. Co.*, No. 2:21-CV-01273, 2021 WL 4134033, at *2 (E.D. La. Sept. 9, 2021). The Legislature's decision to amend Section 22:868(A) to prohibit insurance contract clauses depriving Louisiana courts of venue shortly after the Fifth Circuit's ruling in *Al Copeland* suggests Louisiana has a strong public interest in locally adjudicating insurance claims affecting Louisiana residents. *Oak Haven*, 2021 WL 4134033, at *3. Consequently, enforcement of the forum selection

clauses in plaintiffs' insurance policy could contravene a strong public policy of Louisiana.

The Court, however, need not decide that issue today because Section 22:868 does not apply to the instant case. For Section 22:868 to apply, the insurance policy must be "delivered or issued for delivery" in Louisiana. LA. STAT. ANN. § 22:868(A) (2021). Walaa argues that even if it was possible for Section 22:868 to prohibit a forum selection clause in an insurance policy, it cannot do so here because plaintiffs' insurance policy was not delivered or issued for delivery in Louisiana. Rec. Doc. 45-1 at 10. Plaintiffs, on the other hand, maintain the policy was delivered in New Orleans, Louisiana. Rec. Doc. 67 at 6-8. Walaa has the better argument here.

There are three requirements for delivery of an insurance policy: "(1) whether the company or its agent intentionally parts with control or dominion of the policy; (2) whether the company or its agent places the policy in control or dominion of the insured or some person acting for him; and (3) the underlying purpose of the delivery is to make valid and binding a contract of insurance." *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 120 F.3d 583, 586 (5th Cir. 1997) (internal quotation marks omitted). Delivery can be actual or constructive. *Id.* "Whether delivery has occurred depends upon the intention of the parties as manifested by their acts or words." *Auster Oil & Gas, Inc. v. Stream*, 891

F.2d 570, 574 (5th Cir. 1990). Any document "required by law in an insurance transaction or that is to serve as evidence of insurance coverage may be delivered . . . by electronic means."[8] LA. STAT. ANN. § 22:2462(A) (2021). Electronic delivery "shall be considered equivalent to and have the same effect as any delivery method required by law, including" delivery by mail. *Id.* § 22:2462(B).

Here, prongs one and three of the *McDermott* test are not seriously in dispute by either party. *See generally* Rec. Docs. 45-1, 67, 81. But the question remains as to whether delivery occurred when Walaa, the insurer, placed the policy in control of Marsh KSA or when Marsh KSA placed the policy in control of Dynamic International. The parties dispute whether Marsh KSA was acting as an agent for Walaa or for plaintiffs. *See* Rec. Doc. 67 at 6-8; Rec. Doc. 81 at 2-4. "Under Louisiana law,[9] an insurance broker is generally deemed to be the agent of the insured rather than the insurer." *Flex Energy, LLC v. St. Paul Surplus Lines Ins. Co.*, No. 6:09-cv-1815, 2011 WL 2434095, at *6 (E.D. La. June 13, 2011) (quoting *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 204 (5th Cir. 1990)). But determining an agency relationship is a factual inquiry "to be made in consideration of the totality of the circumstances." *Motors Ins. Co.*, 917 F.2d at 204. "A broker who solicits business for more than one insurer, who has no power

---

[8] The Court uses Louisiana law to interpret the term "delivery" in Section 22:868(A). *See McDermott Int'l*, 120 F.3d at 586-87.
[9] *See supra* note 8.

to bind the insurer without permission, or who is asked by the client to procure coverage wherever possible at the best price, is not the agent of the insurer." *Id.*

On January 26, 2017, Marsh KSA confirmed with Dynamic International's EVP and Chief Financial Officer that coverage for comprehensive general liability insurance was placed with an inception date of January 12, 2017. Rec. Doc. 70-1 at 9-10. Despite this confirmation, the insurance policy was not issued until after Dynamic International's general counsel began inquiring about the policy. *See id.* at 8, 88; *see also* Rec. Doc. 67 at 7. Marsh KSA's representative told Dynamic International that the policy would only be issued if Dynamic International submitted a Broker's Letter of Authorization (BLA). Rec. Doc. 70-1 at 132-33. On November 6, 2019, Dynamic International's general counsel sent Marsh KSA the requested BLA, despite dating the BLA January 1, 2017 at Marsh KSA's insistence. *Id.* at 131, 138. The BLA specifically states:

> Effective as of January 1, 2017, [DISA] has exclusively appointed [Marsh KSA] to act as our insurance representative and/or broker of record and to communicate on our behalf with any insurance company, reinsurance company and/or their agent concerning DISA's commercial insurance program and/or policy(ies) in connection with the [SAUDI ARAMCO pipeline replacement project].
>
> This letter also authorizes you to furnish [Marsh KSA] with all information [Marsh KSA] may request from you as it pertains to our insurance contracts, rates, rating schedules, surveys, reserves, retention, policies, certificates, or other data [Marsh KSA] may request.

Rec. Doc. 70-1 at 136. On November 17, 2019, Walaa's predecessor sent plaintiffs' insurance policy to Marsh KSA via email. Rec. Doc. 45-4 at 49. Marsh KSA then sent Dynamic International's general counsel a copy of the insurance policy via email on November 19, 2019. Rec. Doc. 70-1 at 28.

These facts demonstrate that when Walaa sent Marsh KSA plaintiffs' insurance policy on November 17, 2019 via email, Marsh KSA was acting as DISA's agent, not Walaa's. *See* LA. STAT. ANN. § 22:2462 (2021). According to the BLA letter that DISA signed, DISA appointed Marsh KSA to act as its insurance broker. Rec. Doc. 70-1 at 136. Not only did DISA authorize Marsh KSA to communicate on its behalf, but DISA also authorized it to receive any information pertaining to insurance policies. *Id.* Representatives from Dynamic International also communicated with Marsh KSA extensively throughout the process of negotiating its insurance policy. Rec. Doc. 70-1 at 9-12, 82-98. Thus, Marsh KSA was authorized to receive Walaa's insurance policy on behalf of DISA, and consequently, delivery occurred in Saudi Arabia when Walaa sent Marsh KSA the policy via email.

Still, plaintiffs claim they never authorized Marsh KSA to receive their insurance policy, they only authorized Marsh KSA to communicate on their behalf. Rec. Doc. 70 at 17. This argument, however, contradicts *McDermott*. The Court there found when the policy was delivered to a company's London broker, the policy was

deemed delivered in London. *See McDermott*, 120 F.3d at 584, 587. Regardless of whether DISA's authorization to furnish Marsh KSA with "information . . . as it pertains to our . . . policies" indicated explicit permission for Walaa to issue plaintiffs' insurance policy to Marsh KSA on plaintiffs' behalf, the BLA explicitly states that DISA appointed Marsh KSA "to act as our insurance representative and/or broker of record." Rec. Doc. 70-1 at 136. As DISA's broker of record, Marsh KSA could receive plaintiffs' insurance policy on plaintiffs' behalf. *See McDermott*, 120 F.3d at 587. The Court, therefore, finds that delivery of plaintiffs' insurance policy occurred when Walaa delivered its insurance policy to Marsh KSA on behalf of DISA via email in Saudi Arabia. *See* La. Stat. Ann. § 22:2462(A), (B) (2021) (allowing electronic delivery for insurance documents). Accordingly, delivery of the insurance policy did not occur in Louisiana, and thus, Section 22:868 does not apply to this instant dispute. *See* La. Stat. Ann. § 22:868(A) (2021).

Plaintiffs insist, however, that Marsh USA (and by extension MMC) was plaintiffs' only broker. Rec. Doc. 67 at 7. Marsh KSA acted as Walaa's broker, and at most, as a dual agent. *Id.*; Rec. Doc. 70 at 17. In response to Walaa's motion to dismiss pursuant to Rule 12(b)(1) and (2), however, plaintiffs concede that Marsh KSA was their broker until 2017. Rec. Doc. 70 at 20. They maintain, however, that this broker relationship no longer existed in

September 2019. *Id.* But Marsh KSA was solely plaintiffs' insurance broker, not Walaa's agent, because Marsh KSA does not meet the definition of an insurance agent. *See Motors Ins. Co.*, 917 F.2d at 204. First, plaintiffs never provide evidence that Marsh KSA only solicited business from Walaa, rather than other insurers. Indeed, the documents plaintiffs do provide suggest plaintiffs asked Marsh KSA "to procure coverage wherever possible at the best price." *See Motors Ins. Co.*, 917 F.2d at 204; Rec. Doc. 70-1 at 12 ("Despite a competitive price and $100M offshore limit, our broking team have secured 102.5% subscription on the TPL as per the table below. All reinsurers approached were S&P A-/better rated, except the local insurer in Saudi which is an AIG Joint venture."). The emails plaintiffs provide indicate that Marsh KSA approached multiple insurers to procure plaintiffs' policy. *See id.* ("The local policy in Saudi Arabia will be issued by AIG JV company in Saudi Arabia."). Second, plaintiffs do not demonstrate that Marsh KSA ever had any power to bind Walaa without permission. *See* Rec. Doc. 80 at 11.

Plaintiffs also suggest that Marsh KSA's role in collecting plaintiffs' premium demonstrates that Marsh KSA acted as Walaa's agent. *See* Rec. Doc. 70 at 20-21. But collecting premiums does not automatically mean a broker is an agent of the insurer. *See Fair Grounds Corp. v. Travs. Indem. Co. of Ill.*, 99-301, p. 11 (La. App. 5 Cir. 9/28/99); 742 So. 2d 1069; *see also* LA. STAT. ANN.

§ 22:1542(3) (2021). Instead, the totality of circumstances indicates that Marsh KSA was not Walaa's agent.

Finally, plaintiffs note that only DISA issued the BLA authorizing Marsh KSA to obtain insurance on its behalf. Rec. Doc. 70 at 18. While this fact may be true, representatives for Dynamics International were in constant communication with Marsh KSA to procure an insurance policy for the pipeline project. *See* Rec. Doc. 70-1 at 9-12, 82-98. Indeed, it was a representative from Dynamics International with whom Marsh KSA first confirmed insurance coverage. *Id.* at 10. Furthermore, it was Mark Mahfouz, the general counsel of Dynamics International, who provided Marsh KSA with DISA's BLA after he ascertained from Marsh KSA exactly what information the letter should contain. *Id.* at 82-98. Throughout the entire process of procuring insurance, Dynamics International, not only DISA, utilized Marsh KSA's services. *See* Rec. Doc. 70-1 at 9-12, 82-98. Therefore, the Court finds plaintiffs assertions that Marsh KSA was acting as Walaa's agent to be baseless, and that plaintiffs' insurance policy was initially delivered in Saudi Arabia to Marsh KSA on behalf of plaintiffs. Accordingly, Section 22:868 does not apply to plaintiffs' insurance policy and the policy's forum selection clauses are enforceable.[10]

---

[10] Walaa also alleges that Section 22:868 does not apply because plaintiffs' insurance policy is either ocean marine insurance or foreign trade insurance or because Walaa is a surplus lines insurer or an alien insurer. Rec. Doc. 45-1 at

### C. Public Interest Factors

Because the Court finds the forum selection clauses in plaintiffs' insurance policy to be valid, it only applies a modified test for determining dismissal for *forum non conveniens*. *Atl. Marine Constr.*, 571 U.S. at 63-64. The private factors for the *forum non conveniens* analysis must favor the forum designated in the contract and the Court only examines the public interest factors. *Id.* "Public interest factors will rarely defeat a transfer motion." *Atl. Marine Constr.*, 571 U.S. at 51. The party acting in violation of the forum selection clause has the burden of proving that public interest factors "overwhelmingly disfavor transfer." *Id.* Here, the Court finds the public factors weigh in favor of dismissal for *forum non conveniens*.

### 1. Administrative Difficulties Flowing from Court Congestion

For this factor, courts often weigh relative court congestion. *DTEX,* 508 F.3d at 802. Plaintiffs provide no information as to the level of court congestion in the Eastern District of Louisiana ("EDLA").[11] *See* Rec. Doc. 67 at 19. They

---

9-10; Rec. Doc. 81 at 5-8. Additionally, Walaa argued that Section 22:868(A) does not apply because plaintiffs' policy does not cover "subjects located, resident, or to be performed in Louisiana." Rec. Doc. 45-1 at 14-16. Furthermore, Walaa claims the Court should use its discretion under the Declaratory Judgment Act to refuse jurisdiction in favor of an alternative forum. *Id.* at 21-22. The Court need not address any of these assertions because as plaintiffs' insurance policy was not delivered in Louisiana, Section 22:868 does not apply, and the forum selection clauses in plaintiffs' insurance policy are valid.

[11] We can take judicial notice that EDLA's caseload appears to be lower than in the pre-pandemic era. But there is no indication whether the Saudi Arabian

claim without support that "the parties would undeniably proceed to trial quicker than in any Saudi Arabian quasi-judicial proceeding or an arbitration." *Id.* Walaa, on the other hand, does provide statistics on adjudication of insurance claims in Saudi Arabia, but to the Court's knowledge, those statistics do not include the length of time for an insurance claim to be fully adjudicated. *See* Rec. Doc. 81 at 15, 15 n.40. This Court notes, however, that the public interest in minimizing administrative difficulties weighs in favor of dismissal, given the likely application of Saudi Arabian law. Considering plaintiffs offer no evidence of relative congestion of Saudi Arabian Insurance Dispute Committees and EDLA, this factor favors dismissal. *See Tellez v. Madrigal*, 223 F. Supp. 3d 626, 642 (W.D. Tex. 2016).

### 2. Local Interest in Having Localized Controversies Resolved at Home

The second public interest factor also tips in support of dismissal. This case centers on whether plaintiffs are entitled to coverage for damage to SAUDI ARAMCO's power cables. The insurance policy was issued in Saudi Arabia and the property damage occurred in Saudi Arabia. Rec. Doc. 1-2 at 1; Rec. Doc. 35 at 6. Relevant parties reside in both Saudi Arabia and Louisiana. Although there are relevant parties in both forums and the insurance policy was negotiated in both locations, that Walaa issued the relevant

---

judicial system will present worse or lesser difficulties in resolving instant claims or similar claims.

insurance policy in Saudi Arabia and that the incident occurred there, supports dismissal in favor of Saudi Arabia. Saudi Arabia likely has a stronger interest in deciding the applicability of an insurance policy issued in its country by a Saudi Arabian insurer. *See Kempe v. Ocean Drilling & Exp. Co.*, 876 F.2d 1138, 1146 (5th Cir. 1989).

### 3. Familiarity with Governing Law

As this Court has already decided that the forum selection clauses in plaintiffs' insurance policy are enforceable, Saudi Arabian law applies to plaintiffs' underlying dispute. *See* Rec. Doc. 1-2 at 6, 27, 33. Saudi Arabia is much more familiar with its own law then a court in the United States would be, and consequently, this factor militates in favor of dismissal. *See Kempe*, 876 F.2d at 1146 (finding this factor tips in favor of a foreign jurisdiction when that jurisdiction's laws will apply).

### 4. Avoiding Application of Foreign Law and Conflict of Laws

As noted earlier, Saudia Arabian law will likely apply to the instant case because the insurance policy at issue contains an enforceable choice of law clause. Although "the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens*," this factor still favors dismissal. *See Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987). Whether the case proceeds in Louisiana or Saudi Arabia, Saudi Arabian law still applies. *See* Rec. Doc. 1-2 at 6. Meaning,

a conflict of law analysis will likely not be required in Saudi Arabia, but could be more likely to occur in Louisiana. Accordingly, the ability to avoid application of foreign law, supports dismissal in this case.

### 5. Unfairness of Burdening Citizens with Jury Duty

This factor prioritizes alleviating a community from the burden of jury duty when that community has no relation to the litigation. *DTEX*, 508 F.3d at 803. Here, a Louisiana juror has some interest in an insurance dispute involving a Louisiana insured. Nevertheless, as Saudi Arabia has a greater interest in resolving this dispute, this factor militates toward dismissal.

### 6. Conclusion

Although Louisiana citizens might have some interest in seeing this dispute adjudicated in Louisiana, Saudi Arabia's stronger interest in the case, tips the public interest factors in favor of dismissal for *forum non conveniens.*

### D. Motion to Dismiss Pursuant to Rule 12(b)(1) and (2)

As this Court finds that plaintiffs' claims against Walaa should be dismissed for *forum non conveniens*, the Court need not reach a decision on whether plaintiffs' claims against Walaa should also be dismissed pursuant to Rule 12(b)(1) and (2). *See Mitchell Law Firm*, 8 F.4th at 422; *Ibarra*, 493 F. App'x at 492-93.

New Orleans, Louisiana this 20th day of December, 2021

_____

SENIOR UNITED STATES DISTRICT JUDGE